Sarah E. FAGAN, General Administratrix and Administratrix Ad Prosequendum of the Estate of Michael J. Fagan, Deceased,

v.

The CITY OF VINELAND, a Municipal Corporation of the State of New Jersey; Joseph Cassisi, Jr., Chief of Police of the City of Vineland; Police Officers David Tesoroni; Peter F. Coccaro, III; Benny Velez; Phillip C. Bocelli; Richard Put-

nam; David Cardana; Mario R. Brunetta, Jr.; John Does, (fictitious names) representing other police officers of the City of Vineland Police Department; Town Liquors, a/d/b/a VTL, Inc.; Marquez Amnon Corporation, a/d/b/a East Landis Hotel and Motel; John Doe (fictitious name) agent, servant or employee selling liquors for Marquez Amnon Corporation, a/d/b/a East Landis Hotel and Motel; Jeffrey T. Pindale; and Mary Ellen Duke, Administratrix of the Estate of Christopher M. Duke, Deceased, jointly, severally and in the alternative.

Wanda PINDALE

v.

TOWN LIQUORS, a/d/b/a VTL, Inc.; John Doe I, (fictitious name) agent, servant or employee selling liquors for Town Liquors, a/d/b/a VTL, Inc.; Marquez Amnon Corporation a/d/b/a East Landis Hotel and Motel; John Doe II, (fictitious name) agent, servant or employee selling liquors for Marquez Amnon Corporation, a/d/b/a East Landis Hotel and Motel; The City of Vineland, a Municipal Corporation of the State of New Jersey; Joseph Cassisi, Jr., Chief of Police of the City of Vineland; David Tesoroni; John Doe III; and John Doe IV, (fictitious names) representing other police officers of the City of Vineland Police Department; and Jeffrey T. Pindale, jointly, severally and in the alternative

v.

Mary Ellen DUKE, Administratrix of the Estate of Christopher M. Duke, Third Party Defendant.

Maurice G. DAVIS, Jr.

v.

VTL, INC. a/d/b/a Town Liquors; John Doe I, (fictitious name) agent, servant or employee selling liquors for VTL, Inc., a/d/b/a Town Liquors; Marquez Amnon Corporation a/d/b/a East Landis Hotel and Motel; John Doe II, (fictitious name) agent, servant or employee selling liquors for Marquez Amnon Corporation a/d/b/a East Landis Hotel and Motel; The City of Vineland, a Municipal Corporation of the State of New Jersey; Joseph Cassisi, Jr., Chief of Po-

lice of the City of Vineland; David Tesoroni; John Doe III, and John Doe IV (fictitious names) representing other police officers of the City of Vineland Police Department; and Jeffrey T. Pindale, jointly, severally and in the alternative.

Jeffrey T. PINDALE, Third Party Plaintiff,

v.

Mary Ellen DUKE, Administratrix of the Estate of Christopher M. Duke, Third Party Defendant.

Albino GENETTI, Administrator Ad Prosequendum of the Estate of Albert Stavoli, Deceased

v.

VTL, INC. a/d/b/a Town Liquors; John Doe I, (fictitious name) agent, servant or employee selling liquors for VTL, Inc. a/d/b/a Town Liquors; Marquez Amnon Corporation a/d/b/a East Landis Hotel and Motel; John Doe II, (fictitious name) agent, service or employee selling liquors for Marquez Amnon Corporation a/d/b/a East Landis Hotel and Motel; The City of Vineland, a Municipal Corporation of the State of New Jersey; Joseph Cassisi, Jr., Chief of Police of the City of Vineland; David Tesoroni; John Doe III, and John Doe IV (fictitious names) representing other police officers of the City of Vineland Police Department; and Jeffrey T. Pindale, jointly, severally and in the alternative

v.

Mary Ellen DUKE, Administratrix of the Estate of Christopher M. Duke, Third Party Defendant.

Mary Ellen DUKE, Administratrix and Administratrix Ad Prosequendum of the Estate of Christopher M. Duke, Deceased,

v.

Jeffrey T. PINDALE, presently incarcerated at the Trenton State Prison; Town Liquors a/d/b/a VTL, Inc.; Marquez Amnon Corporation a/d/b/a East Landis Hotel and Motel; John and Jane Does, fictitious names, for unknown entities and persons believed to have sold, served, or

otherwise provided liquors to Jeffrey T. Pindale, The City of Vineland, a Municipal Corporation of the State of New Jersey, County of Cumberland, New Jersey; John and Jane Does, fictitious names, for unknown governmental entities and for unknown individuals believed to be police officers of said government entities involved in an unlawful high speed automobile pursuit; Joseph Cassisi, Sr., individually and as an agent of the Vineland Police Department; Mario R. Brunetta, Jr., individually and in his official capacity as the Captain of the City of Vineland Police Department; David Tesoroni, individually and in his official capacity as a member of the City of Vineland Police Department; Peter F. Coccaro, III, individually and in his official capacity as a member of the City of Vineland Police Department; Benny Velez, individually and in his official capacity as a member of the City of Vineland Police Department; Phillip C. Bocelli, individually and in his official capacity as a member of the City of Vineland Police Department; Richard Putnam, individually and in his official capacity as a member of the City of Vineland Police Department; John and Jane Does, fictitious names for unknown individuals believed to be other police officers of the City of Vineland Police Department involved in an unlawful high speed automobile pursuit, jointly, severally and in the alternative,

Mary Ellen Duke and Sarah Fagan, Appellants No. 92–5481, Appellants No. 92–5594,

Maurice G. Davis, Jr., Wanda Pindale and Albino Genetti, Appellants No. 92–5482, Appellants No. 92–5551.

Nos. 92–5481, 92–5482, 92–5551 and 92–5594.

United States Court of Appeals, Third Circuit.

Argued May 6, 1993.

Decided April 29, 1994.

Gerald M. Eisenstat, Harry Furman (argued), Eisenstat, Gabage & Berman, Vineland, NJ, for appellant Sarah Fagan.

Arnold Robinson, Millville, NJ, for appellant Wanda Pindale.

Harold B. Shapiro, Dana Davis Teague (argued), Shapiro & Shapiro, Vineland, NJ, for appellant Maurice G. Davis, Jr.

Philip S. Burnham, II, Basile, Testa & Testa, Vineland, NJ, for appellant Albino Genetti.

John M. Fitzpatrick, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, PA, for appellant Mary Ellen Duke.

A. Michael Barker (argued), Horn, Goldberg, Gorny, Daniels, Paarz, Plackter & Weiss, Atlantic City, NJ, for appellees City of Vineland, David Tesoroni, Peter F. Cocca-

ro, III, Benny Velez, Phillip D. Bocelli, Richard Putnam, Mario R. Brunetta, Jr. and Joseph Cassisi, Jr.

Richard M. Pescatore, Perlow, Sebera & Pescatore, Bridgeton, NJ, for appellee Town Liquors d/b/a VTL, Inc.

Stacy L. Moore, Jr., Parker, McCay & Criscuolo, Marlton, NJ, for appellee Marquez Amnon Corp. d/b/a E. Landis Hotel and Motel.

Peter W. Sachs, Sachs & Sachs, Holmdel, NJ, for appellee Estate of Christopher M. Duke.

Before: SLOVITER, Chief Judge, COWEN and LEWIS Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

These five consolidated actions under 42 U.S.C. § 1983 arose from a high-speed police pursuit in Vineland, New Jersey, in which an automobile attempting to evade Vineland police officers crashed into an innocent by-stander's vehicle. Three people were killed and three others were injured. The plaintiffs are the survivors of the accident and the estates and relatives of those who were killed. They claim that their Fourteenth Amendment substantive due process rights were violated because the police officers pursued the fleeing automobile in a reckless manner in violation of statewide guidelines, and because the City of Vineland ("the City" or "Vineland") had a policy of not properly training its police officers regarding high-speed pursuits. Plaintiffs also brought a state law negligence claim against defendant Town Liquors. Plaintiffs allege that Town Liquors, which sold wine to the driver of the fleeing automobile, contributed to his intoxication and helped to cause the accident.

Plaintiffs appeal the grant of summary judgment in favor of all of the defendants.

The district court held (1) that the law of the case doctrine did not prohibit it from reconsidering a predecessor judge's earlier denial of summary judgment in favor of the defendants; (2) the standard of care under section 1983 is conduct which "shocks the conscience," and the pursuing officers' actions did not rise to that level of misconduct as a matter of law; (3) since none of the officers were liable, the City could not be liable because its alleged failure to train had not caused a violation of plaintiffs' constitutional rights; (4) the absence of any remedy under New Jersey law did not affect the scope of plaintiffs' due process rights; and (5) the evidence against defendant Town Liquors was insufficient, as a matter of law, to show that the wine it sold was a cause of the accident.

We will affirm in part and reverse in part. We agree that the law of the case doctrine does not apply. We hold, however, that the City may be held independently liable for violating the plaintiffs' constitutional rights, even if no individual police officer is liable. We agree that the absence of a state remedy has no effect on plaintiffs' rights under the Due Process Clause. We also agree that the record contains insufficient evidence to show that defendant Town Liquors proximately caused the accident. We therefore will reverse the grant of summary judgment rendered in favor of the City, and affirm the grant of summary judgment in favor of Town Liquors.[1]

### I.

### A. FACTS

The parties disagree about many of the factual details. Because we are reviewing a grant of summary judgment, we will view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving parties, the plaintiffs. *Clement v.*

---

[1] Initially, this panel filed an opinion on August 5, 1993 and reversed the grant of summary judgment in favor of the police officers. Upon rehearing in banc the full court holds that the standard for liability under section 1983 and the Due Process Clause in a police pursuit case is whether the conduct of the defendant police officers "shocks the conscience," and will affirm the

district court's grant of summary judgment in favor of the defendant police officers. The in banc opinion is filed contemporaneously with this opinion. *See Fagan v. City of Vineland*, 22 F.3d 1296 (3d Cir.1994) (in banc). This panel opinion essentially reinstates the original panel opinion except the issue addressed by the in banc court.

*Consolidated Rail Corp.*, 963 F.2d 599, 600 (3d Cir.1992).

On March 6, 1988, at about 1:55 a.m., defendant Officer David Tesoroni of the Vineland Police Department was on routine patrol on Landis Avenue in Vineland, New Jersey. Landis Avenue is the main street running through the City's business district and is a popular gathering and cruising place for young people. As Officer Tesoroni headed west on Landis Avenue, he spotted a white Camaro heading east. The Camaro was not speeding, but a passenger was standing up through the car's open T-top roof and waving his arms. The car was driven by Jeffrey Pindale, age 20. The passengers were his wife Wanda Pindale, age 19, and his friends Albert Stavoli, age 19, and Maurice Davis, age 19.

Tesoroni made a U-turn on Landis Avenue and accelerated. He intended to give the driver a warning regarding a violation described by him as "[a]llowing his passenger to ride on parts not intended for." Plaintiffs' App. at 15. The Camaro turned right onto Eighth Street and headed south into a residential neighborhood. Tesoroni followed the Camaro onto Eighth Street and, as he made the turn, activated his overhead lights. The Camaro drove for two blocks south to the intersection with Grape Street. Up until this point, the driver had committed no violation aside from allowing his passenger to stand through the T-roof.

The Camaro turned right onto Grape Street, where it accelerated to between 35 and 40 miles per hour and headed west. It drove through two stop signs where it slowed down but failed to stop. Tesoroni followed and accelerated. He slowed down at the stop signs but did not stop for them. The Camaro turned left onto Sixth Street and headed south for one block, and then left again onto Montrose Street heading east. The neighborhood was residential and had a 25 mile-per-hour speed limit. The Camaro pulled away 35 to 40 miles per hour, and Tesoroni followed at 30 to 35 miles per hour. At this point, Tesoroni radioed police headquarters and informed them of his actions.

The pursuit continued through the residential neighborhood, and more stop signs were run. Defendant Officer Richard Putnam was on patrol that evening. He positioned his car on Almond Street where it could block the flow of traffic. The Camaro sped down Almond Street and passed him. Putnam radioed police headquarters and stated that the "[s]ubject just swerved at me." Plaintiffs' App. at 14. When the Camaro reached the intersection of Almond Street and East Avenue, the driver turned his lights off. Tesoroni turned on his siren. The driver accelerated to 40 miles per hour and headed south on East Avenue for one block, then left onto Michigan Avenue for one block, and then south onto Myrtle Avenue for two more blocks until he reached Chestnut Avenue. Tesoroni accelerated to about 35 miles per hour to keep up with him.

At police headquarters, defendant Sergeant Edgar Zatzariny was in charge. He had the authority to order Tesoroni to discontinue the pursuit, but he did not do so. Sergeant Zatzariny directed the dispatcher to ask Tesoroni why he was pursuing the Camaro, but Tesoroni never responded.

The Camaro turned right onto Chestnut Avenue, a four-lane road with two lanes in each direction, and accelerated to 50 miles per hour heading west. Officer Putnam pulled out onto Chestnut Avenue from a sidestreet and blocked the outside westbound lane, with his headlights and overheard lights on. Putnam waved his arms to signal the Camaro to stop. It sped past him at 50 to 60 miles per hour, with Tesoroni in pursuit.

During the chase on Chestnut Avenue, Officer Peter Coccaro used his patrol car to block off Eighth Avenue where it intersected with Chestnut Avenue. The Camaro sped past him as well.

Defendant Officer Benny Velez drove to Chestnut Avenue from Sixth Street. He saw the Camaro speed past him with Tesoroni one to two blocks behind. Velez turned onto Chestnut Avenue behind the Camaro and in front of Tesoroni, thus becoming the lead officer in the pursuit. Velez had his siren and overhead lights on. The Camaro was going 70 to 80 miles per hour, and Velez pursued at 50 to 60 miles per hour. Pindale

and the pursuing police cars ran several red lights on Chestnut Avenue.

As Velez drove over a rise at about Chestnut Avenue and Fourth Street, he saw the Camaro several blocks ahead at Chestnut Avenue and Holly Hill Terrace. Velez radioed headquarters that the car was approaching the intersection of Chestnut Avenue and Delsea Avenue, one block further away. Delsea Avenue, like Chestnut Avenue, is one of the main thoroughfares of Vineland. The Camaro ran a red light at the intersection and broadsided a pickup truck traveling on Delsea Avenue. The occupants of the pickup truck, Michael Fagan and Christopher Duke, were killed. Stavoli was killed. Wanda Pindale and Maurice Davis suffered crippling injuries. Jeffrey Pindale, the drunk driver, suffered minor injuries. Immediately after the collision, an independent witness to the collision saw four police cars approach the accident scene from the westbound lanes of Chestnut Avenue with their overhead lights and sirens on.

Some time before the collision, Jeffrey Pindale purchased two bottles of Strawberry Hill Wine from defendant Town Liquors. He, Wanda Pindale, Davis, and Stavoli spent the evening eating and drinking at his home. Jeffrey Pindale drank beer and Jack Daniels purchased from other vendors. He also drank two sips of the Strawberry Hill wine, though according to his wife, "Jeff's sips were more like gulps." Plaintiffs' Supp.App. at 6. After the accident, his blood alcohol level was .12%.

## B. PROCEDURAL HISTORY

In January through March of 1990, the plaintiff-appellants Sarah Fagan, Maurice Davis, Jr., Wanda Pindale, Albino Genetti, and Mary Ellen Duke filed their complaints in the United States District Court for the District of New Jersey. They alleged that various Vineland police officers, including Officers Tesoroni, Velez, Putnam, and Coccaro, violated 42 U.S.C. § 1983 and their Fourteenth Amendment substantive due process rights by recklessly conducting the high-speed pursuit in violation of the Attorney General's guidelines. Plaintiffs brought separate, independent claims against the City

and Police Chief Joseph Cassisi, Jr., for violating section 1983 and the Fourteenth Amendment by following a policy of not properly training and supervising police officers in the conduct of high-speed pursuits, and by following a policy of not enforcing the pursuit guidelines. Plaintiffs also sued defendant Town Liquors under New Jersey law for negligently selling alcoholic beverages to an underaged drinker and thus contributing to the accident. They brought various other claims under the Fourth Amendment and state law that are irrelevant to this appeal.

These five actions were consolidated. The case was originally assigned to Judge Joseph H. Rodriguez. After completion of discovery, the defendant police officers and City made their first motion for summary judgment. On July 26, 1991, Judge Rodriguez denied their motion. After additional discovery was permitted, defendant Town Liquors moved for summary judgment. In October of 1991, the case was reassigned to Judge William G. Bassler. The defendant police officers and City made their second motion for summary judgment. On July 27, 1992, Judge Bassler granted summary judgment in favor of defendant Town Liquors. On July 30, 1992, he granted summary judgment in favor of the police officers and City. *Fagan v. City of Vineland*, 804 F.Supp. 591 (D.N.J. 1992). Plaintiffs filed these appeals.

The district court had jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and pendent jurisdiction over the state claims. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment and apply the same test as the district court under Fed.R.Civ.P. 56(c): whether there remains a genuine issue of material fact, and if not, whether the moving parties are entitled to judgment as a matter of law. *Clement*, 963 F.2d at 600.

## II. LAW OF THE CASE

Judge Rodriguez denied the defendant police officers' first motion for summary judgment with respect to plaintiffs' Fourteenth Amendment substantive due process claims. Plaintiffs argue that the law of the

case doctrine prohibited Judge Bassler from reconsidering that decision and granting defendants' second motion for summary judgment on those same claims. We review Judge Bassler's decision to reconsider his predecessor's ruling for an abuse of discretion. *Coca–Cola Bottling Co. of Elizabethtown, Inc. v. Coca–Cola Co.,* 988 F.2d 386, 411 & n. 25 (3d Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 289, 126 L.Ed.2d 239 (1993).

 The law of the case doctrine limits the extent to which an issue will be reconsidered once the court has made a ruling on it. *See generally, Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162 (3d Cir.1982); Jeremy C. Moore, et al., Moore's Federal Practice ¶ 0.404[4–1]. Although it does not limit the power of trial judges from reconsidering issues previously decided by a predecessor judge from the same court or from a court of coordinate jurisdiction, it does recognize that as a matter of comity a successor judge should not lightly overturn decisions of his predecessors in a given case. *See, e.g., TCF Film Corp. v. Gourley,* 240 F.2d 711 (3d Cir.1957) (transfer from judge to judge in same district); *Hayman,* 669 F.2d at 115 (transfer from district to district). Of course, defining the precise operation of a principle of comity can be difficult to do in an individual case, but we need not do so here. The law of the case operates only to limit reconsideration of the same issue. Since Judge Bassler did not reconsider the same issue decided by Judge Rodriguez, the law of the case doctrine posed no obstacle to Judge Bassler's action.

The relevant portion of Judge Rodriguez's opinion and order reads in its entirety:

After reviewing the moving papers the court finds that there are genuine issues of material fact and the moving parties are not entitled to judgment as a matter of law on the following issues:

1. Plaintiff's fourteenth amendment substantive due process claim. *See, e.g.,*

*Landol–Rivera v. Cruz Cosme,* 906 F.2d 791 (1st Cir.1990).

Plaintiffs' App. at 163 (footnote omitted). In *Landol–Rivera,* the court held that police officers who accidentally shot a hostage were not liable for a substantive due process violation because their conduct did not reflect a "reckless or callous indifference" to the plaintiff's rights. 906 F.2d at 796–97. Judge Rodriguez's citation of that case might imply that a genuine issue of material fact existed as to whether the defendant police officers acted with a reckless or callous indifference toward the plaintiffs' rights. Alternatively, Judge Rodriguez may have cited *Landol–Rivera,* as he did elsewhere, as an example of a section 1983 claim arising from police conduct which allegedly violates the plaintiffs' Fourteenth Amendment right to substantive due process, instead of their Fourth Amendment right not to be seized unreasonably.

However, the central issue before us and subsequently before the in banc court is whether the standard is conduct which "shocks the conscience" as opposed to reckless or grossly negligent conduct. This precise issue was considered by Judge Bassler. None of the motion papers before Judge Rodriguez addressed whether a "shocks the conscience" standard, versus some other standard, should apply. The plaintiffs have not cited, nor have we discovered, any portion of the record which indicates that Judge Rodriguez was even aware that a "shocks the conscience" standard might exist under section 1983.[2]

The law of the case doctrine does not preclude a trial judge from clarifying or correcting an earlier, ambiguous ruling. *See Swietlowich v. County of Bucks,* 610 F.2d 1157, 1164 (3d Cir.1979). The record is unclear as to whether Judge Bassler addressed the same issue as Judge Rodriguez. We therefore hold that Judge Bassler did not abuse his discretion by reconsidering wheth-

---

2. After Judge Rodriguez denied defendants' first motion for summary judgment, the Fourth Circuit held in *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 720 (4th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992), that the "shocks the conscience" standard applies in police pursuit cases. Defendants

relied on this case in their second motion for summary judgment. *Temkin* apparently alerted the parties and Judge Bassler that misconduct more serious than recklessness might be required to state a claim for violations of substantive due process.

er the defendant police officers were entitled to summary judgment on the substantive due process claims.

## III. INDEPENDENT MUNICIPAL LIABILITY

The plaintiffs claim that the City violated the Fourteenth Amendment by following a policy of not properly training its police officers on how to conduct high-speed pursuits in compliance with the guidelines. After it concluded that the police officers had not violated the Constitution, the district court granted summary judgment in favor of the City, reasoning that there was no underlying constitutional violation for which the City could be held accountable. We will now consider whether a municipality can be held independently liable under section 1983 in a police pursuit case when none of the pursuing police officers are liable.

■ The Supreme Court unfortunately has provided us with little guidance. A municipality can be sued directly under section 1983 where action pursuant to a municipal policy or custom causes a constitutional tort. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). A municipality, however, cannot be held liable solely because it employs a tortfeasor. There is no *respondeat superior* liability under section 1983. *Id.* "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38.

■ In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989), the Court held that the inadequacy of police training may serve as the basis for municipal liability under section 1983 if the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come in contact. To meet the deliberate indifference standard, the failure to train must reflect a deliberate or conscious choice made by city policymakers. *Id.* at 389, 109 S.Ct. at 1205. The plaintiff must also show that the city's policy

actually caused a constitutional injury. *See id.* at 389–90, 392, 109 S.Ct. at 1205, 1206.

Under *Monell* and *Canton*, a municipality can be liable for a policy of failing to train police officers only if that policy causes a violation of the plaintiff's constitutional rights. The Court, however, did not address whether municipal liability is possible if none of the inadequately trained police officers individually violates the Constitution.

The district court cited *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam), to support its holding that Vineland cannot be liable unless one of the pursuing police officers is liable. In *Heller*, police officers were accused of making an arrest with excessive force and without probable cause. The jury returned verdicts in favor of the officers but against the city. The Court reversed the verdict against the city because it was inconsistent, stating:

> [N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.

*Id.* at 799, 106 S.Ct. at 1573 (emphasis in original).

This language should not be read so broadly as to automatically preclude municipal liability absent an individual police officer's liability. In *Heller*, the city and its Police Commission "were sued only because they were thought legally responsible for [Officer] Bushey's actions." 475 U.S. at 799, 106 S.Ct. at 1573. Once the jury determined that the arrest was lawful, there was no underlying constitutional violation for which the city or any other defendant could be held liable.

In so holding, the Supreme Court was not laying down a general rule for a substantive due process claim. Apparently, the Supreme Court treated *Heller* as a case brought under

section 1983 for violations of the Fourth Amendment. The Supreme Court characterized *Heller* as a case where the plaintiff "claimed damages by reason of having been arrested without probable cause and having been the victim of excessive force in the making of the arrest." *Id.* at 797, 106 S.Ct. at 1572. This language was characteristic of Fourth Amendment claims. Secondly, the Court characterized the liability of the City of Los Angeles and its Police Commission as one of *respondeat superior* by noting that "[t]hey were sued only because they were thought legally responsible for Bushey's actions." *Id.* at 799, 106 S.Ct. at 1073. Thus, the Court did not address any independent section 1983 claims against the City of Los Angeles and its Police Commission. Because of these considerations, we do not believe that *Heller* can be applied to a substantive due process claim directly against a municipality. Indeed, the Supreme Court itself drew a line between a claim for Fourth Amendment violations and one for substantive due process violations. *See Albright v. Oliver,* —— U.S. ——, —— ——, 114 S.Ct. 807, 810–14, 127 L.Ed.2d 114 (1994) (plurality opinion).

■ We hold that in a substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the Constitution. Unlike in *Heller,* the plaintiffs in this case brought separate, independent constitutional claims against the pursuing officers and the City. These claims are based on different theories and require proof of different actions and mental states. The pursuing officers are liable under section 1983 if their conduct "shocks the conscience." *Fagan v. City of Vineland,* 22 F.3d 1296 (3d Cir.1994) (in banc). The City is liable under section 1983 if its policymakers, acting with deliberate indifference, implemented a policy of inadequate training and thereby caused the officers to conduct the pursuit in an unsafe manner and deprive the plaintiffs of life or liberty.

A finding of municipal liability does not depend automatically or necessarily on the liability of any police officer. Even if an officer's actions caused death or injury, he can only be liable under section 1983 and the Fourteenth Amendment if his conduct "shocks the conscience." *Id.*[3] The fact that the officer's conduct may not meet that standard does not negate the injury suffered by the plaintiff as a result. If it can be shown that the plaintiff suffered that injury, which amounts to deprivation of life or liberty, because the officer was following a city policy reflecting the city policymakers' deliberate indifference to constitutional rights, then the City is directly liable under section 1983 for causing a violation of the plaintiff's Fourteenth Amendment rights. The pursuing police officer is merely the causal conduit for the constitutional violation committed by the City.

If we conditioned municipal liability on an individual police officer's liability in every case, it might lead to illogical results. A municipality would escape liability whenever the conduct of the acting police officer did not meet the "shocks the conscience" standard, even though municipal policymakers, acting with deliberate indifference or even malice, implemented a policy which dictated his injury-causing actions. It is easy to imagine a situation where an improperly trained police officer may be ignorant of the danger created by his actions and inflicts injury. Meanwhile, the city's policymakers, with a wealth of information available to them, are fully aware of those dangers but deliberately refuse to require proper training. The officer may escape liability because his conduct did not "shock the conscience." It does not follow, however, that the city should also escape liability. The city caused the officer to deprive the plaintiff of his liberty; the city therefore has violated the plaintiff's Fourteenth Amendment rights. *See* Barbara Kritchevsky, *Making Sense of State of Mind: Determining Responsibility in Section 1983 Municipal Liability Litigation,* 60 Geo.Wash.L.Rev. 417, 457–59 (1992).

---

3. These appeals do not involve the doctrine of qualified immunity, which may enable an officer who has actually violated the Constitution to avoid liability. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982).

We addressed the issue of independent municipal liability in *Simmons v. City of Philadelphia,* 947 F.2d 1042 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992), which involved a detainee who committed suicide. The jury found that the turnkey, who was responsible for supervising the decedent, had not violated the decedent's due process rights, but it found that the city had done so through a policy of improper training. A divided panel upheld these verdicts. Judge Becker wrote the judgment of the court, Chief Judge Sloviter concurred in the judgment, and Judge Weis dissented. Judge Becker reasoned that the verdicts were consistent because the city's policymakers, rather than the turnkey, were the city actors whose primary liability must be established in order to hold the city liable under section 1983 for a failure to train. *Id.* at 1063.

Judge Becker distinguished *Heller* and *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458 (3d Cir.1989),[4] as cases in which the defendant municipalities could not be liable because no municipal employee had inflicted a constitutional injury. Furthermore, in *Williams,* unlike in *Simmons,* the plaintiff had not alleged or produced evidence that the municipality, through its policies or its deliberate indifference, directly violated the decedent's constitutional rights. *Id.*

Chief Judge Sloviter did not join the relevant portion of Judge Becker's opinion, but she agreed that the verdicts were consistent because the city's liability could be independent of the turnkey's. *Id.* at 1089 n. 1 (Sloviter, C.J., concurring in the judgment).[5] *Simmons,* therefore, generated two votes and a binding precedent for the principle that a municipality's liability under section 1983 for a substantive due process violation does not depend upon an individual officer's liability.

We draw additional support from *Cannon v. Taylor,* 782 F.2d 947 (11th Cir.1986). A single police officer pursued a fleeing automobile, which crashed into an innocent bystander's automobile. The court held that the officer was not liable under section 1983 because he was merely negligent. *Id.* at 950. The court, however, then considered whether the defendant municipality could be liable for an alleged policy of failing to train. The court examined the evidence on record and concluded that the city's training fell within constitutional boundaries. *Id.* at 950–51. Implicitly, the court concluded that municipal liability was not contingent upon any police officer's liability. *See also Hopkins v. Andaya,* 958 F.2d 881, 888 (9th Cir.1992) (per curiam) ("the police chief and city might be held liable for improper training or improper procedure even if [the individual officer] is exonerated, since they put an officer on the street who is so badly trained").

We decline to follow four other courts of appeals, which have suggested that a municipality can be liable for failure to train only if one of the pursuing police officers violated the Constitution. *See Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 724 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992); *Roach v. City of Fredericktown, Mo.,* 882 F.2d 294, 297–98 (8th Cir.1989); *see also Medina v. City and County of Denver,* 960 F.2d 1493, 1499–500 (10th Cir.1992) (city can be liable if pursuing officers violate Constitution but escape liability because of qualified immunity); *Garner v. Memphis Police Dept.,* 8 F.3d 358, 364–65 (6th Cir.1993) (same), *cert. denied,* —— U.S. ——, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). None of these opinions analyzed the issue of independent municipal

---

4. Defendants rely upon *Williams,* another case in which a detainee committed suicide. We held that the defendant municipality could not be liable under *Monell* for a policy or custom of inadequately caring for suicidal detainees and failing to train officers who supervise them, where none of the officers who had contact with the decedent violated his constitutional rights. 891 F.2d at 467 (citing *Heller,* 475 U.S. at 799, 106 S.Ct. at 1573). *Williams* is distinguishable as a case where municipal liability was contingent upon an individual officer's liability because

there was no independent constitutional claim against the municipality.

5. In his dissent, Judge Weis concluded that the city could not be liable because its policy did not reflect a deliberate indifference to jail suicides. *See Simmons,* 947 F.2d at 1092–96 (Weis, J., dissenting). He did not address whether the city's liability could be independent of the turnkey's liability.

liability, and we therefore. find them unpersuasive.

█ We hold that a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution. Because the City's liability does not depend upon the liability of any police officer, we will reverse the grant of summary judgment rendered in favor of the City.

## IV. LACK OF STATE REMEDY

█ ·The plaintiffs argue that their procedural and substantive due process rights were violated because state law provides them with no remedy against the defendants. In substance, they contend that the absence of a state remedy lowers the standard of liability under the Due Process Clause.

Under New Jersey law, public entities and employees are not liable for any injury caused by an escaping or escaped person. N.J.Stat.Ann. § 59:5–2(b)(2) (1992). This statute renders police officers and municipalities absolutely immune from liability for injuries caused during high-speed pursuits. *Tice v. Cramer,* 133 N.J. 347, 627 A.2d 1090, 1101 (1993) ("[t]he immunities provided for by section 5–2b appear to be absolute except in the event of willful misconduct on the part of a public employee"). We must determine whether the lack of a state remedy affects the plaintiffs' rights under the Due Process Clause.

The Constitution does not guarantee a federal remedy in the absence of a state remedy. As Judge Garth observed on an issue not reached by the in banc majority:

> Were an absolute grant of immunity, precluding state tort suits, sufficient to establish a right to a federal remedy, a pedestrian negligently struck by a police car racing to apprehend a criminal, would be entitled to maintain a 1983 action in federal court if a state immunity statute shielded police from liability for negligent acts occurring in the course of duty. Yet, if the enactment of an immunity statute by a state is deemed to result in a federal remedy by default, not only would the state's legitimate interest in fashioning rules tort law be curtailed, but also state

law would then determine the content of 1983 actions in federal court. This reasoning "would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

*Davidson v. O'Lone,* 752 F.2d 817, 832 n. 1 (3d Cir.1984) (in banc) (Garth, J., concurring), *aff'd sub nom. Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). We agree with this reasoning. The absence of a state remedy does not expand a plaintiff's rights under the Due Process Clause in a constitutional tort case. The district court correctly concluded that the absence of a state remedy in no way affects the choice or application of the appropriate standard of care under section 1983 and the Fourteenth Amendment.

## V. LIQUOR STORE LIABILITY

█ Plaintiffs appeal the grant of summary judgment in favor of defendant Town Liquors. They argue that a genuine issue of material fact exists as to whether wine sold by the defendant contributed to the accident.

█ Under New Jersey law, a licensed server of alcoholic beverages is liable for damages if (1) he was negligent, (2) his negligent service of alcoholic beverages proximately caused injury, and (3) the injury was a foreseeable consequence of that negligence. N.J.Stat.Ann. § 2A:22A–5(a) (1987); *see Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1, 9–10 (1959). A server is negligent if he served a minor, under circumstances where he knew or should have known that the person served was a minor. N.J.Stat.Ann. § 2A:22A–5(b). This liability is not limited to tavern keepers. Licensees who sell package-alcoholic beverages in sealed bottles are liable for injuries to third parties resulting from the sale. *See Tilton v. Brombacher,* 232 N.J.Super. 374, 556 A.2d 1337, 1337, 1339 (Law Div.1989). To satisfy the proximate causation requirement, the alcohol sold by the licensee must have contributed to the patron's intoxication. *Id.* 556 A.2d at 1339. Defendant Town Liquors sold two bottles of

wine to Jeffrey Pindale, who was under the legal drinking age. The district court concluded that there was insufficient evidence to enable a reasonable jury to find that the sale of wine was a proximate cause of the accident.

The plaintiffs' evidence consisted primarily of Wanda Pindale's deposition. Wanda Pindale testified that her husband Jeffrey purchased the two bottles of wine from Town Liquors early in the evening of the accident. The Pindales, Davis, and Stavoli spent that evening eating and drinking in the kitchen at the Pindales' home. They drank the wine purchased from Town Liquors and beer and Jack Daniels purchased from other vendors. Several times during the evening, Wanda Pindale left the kitchen to go into other rooms in the house. When asked what her husband drank, she testified:

A. Jack Daniels, the beer, he had a sip or two of wine.

Q. What wine?

A. My wine.

Q. When was that? When did he have the wine?

A. I couldn't tell you when.

Q. How much?

A. He had enough for a taste. Whether or not he had more when I was in and out of the kitchen to the living room to the bedroom, I don't know if he took more or not.

Plaintiffs' Supp.App. at 20–21. Later in her deposition, she testified:

Q. And your testimony today is that Jeff Pindale may have had a sip or a taste of the Strawberry Hill wine?

A. In my presence he did. Whether he had more when I left the room, I don't know.

Q. But at most, it was—that you saw, it was a sip or a taste?

A. Well, Jeff's sips were like gulps.

*Id.* at 6. Eventually, one of the two bottles was finished and a second one partially consumed.

Four of the plaintiffs consulted Dr. William Villensky as their expert witness. In his report, he concluded:

There is no indication that Jeffrey Pindale consumed more than a sip of the Strawberry Hill wine. That minute amount of wine would not have materially influenced Pendale's [sic] state of intoxication. Therefore Towne Liquor [sic] which sold the Strawberry Hill wine would not have been a causative factor in the accident.

App. to Defendant's Brief at 2. After the accident, Jeffrey Pindale's blood alcohol level was .12%.

Defendant's expert witness, Dr. John Brick, testified that alcohol consumed early in the evening could contribute more to intoxication than alcohol consumed shortly before the accident, because it has more time to get into the driver's bloodstream. Plaintiffs' Supp.App. at 25–26. Jeffrey Pindale drank the wine early in the evening.

We agree with the district court that the evidence offered by plaintiff is insufficient to enable a reasonable jury to conclude, by a preponderance of the evidence, that the wine sold by Town Liquors contributed to Pindale's intoxication. The only evidence which shows that Jeffrey drank the wine is his wife's testimony that he tasted it by having one or two sips or gulps. Though more than half of the wine was eventually consumed, and though some of it may have been drunk when Wanda Pindale was outside of the kitchen, these facts do not show that Jeffrey Pindale drank more than the two gulps. Wanda Pindale testified that she drank the wine while the boys drank mostly Jack Daniels and beer. Aside from Jeffrey's two gulps, she did not know whether any of the boys drank any of the wine. The record, therefore, lacks sufficient evidence from which a jury could reasonably infer that Pindale drank more than two gulps of wine.

The mere existence of a scintilla of evidence in support of a plaintiff's position is insufficient to avoid summary judgment. There must be evidence upon which a jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Given Pindale's heavy state of intoxication, no jury could reasonably conclude

that his drinking of two gulps of wine, whether it occurred early or late in the evening, sufficiently contributed to his intoxication to have been a cause of the accident. Our conclusion is reinforced by the report of plaintiffs' own expert. The district court correctly granted summary judgment in favor of Town Liquors.

## VI. CONCLUSION

For all of the foregoing reasons, we will reverse the grant of summary judgment in favor of the City of Vineland and remand for further proceedings consistent with this opinion. We will affirm the grant of summary judgment in favor of defendant Town Liquors.

The parties will bear their own costs.