Brian L. TRISTANI

v.

CITY OF PITTSBURGH, Appellant.
(Five Cases).

Brian L. Tristani, Appellant,

v.

City of Pittsburgh.

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2000.

Decided May 30, 2000.

Reargument Denied Aug. 4, 2000.

---

Susan E. Malie, Pittsburgh, for appellant.

Timothy P. O'Brien, Pittsburgh, for appellee.

Before DOYLE, President Judge, FRIEDMAN, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

In these consolidated cross-appeals, the City of Pittsburgh (City) and Brian L. Tristani (Plaintiff) appeal from the orders of the Court of Common Pleas of Allegheny County (trial court) dated September 2, 1997 and February 5, 1998, denying the City's motions for judgment on the pleadings and summary judgment, denying the parties' motions for post-trial relief, and entering judgment for Plaintiff against the City.

On May 18, 1991, Plaintiff traveled with a group of friends from Fairmont, West Virginia to Pittsburgh, Pennsylvania, to attend a bachelor party. The group registered at the Best Western Hotel, located in the Parkway Center Mall, at approximately 7:00 p.m. They had a few beers in the room, some drinks in the hotel bar, and from there the men walked to Confetti's, a nightclub also located within the mall.

Confetti's employed off-duty police officers who were stationed outside the club. At approximately 1:00 a.m., Plaintiff and his friends were asked to leave the nightclub. The club manager eventually requested assistance from City police officers Richard Speth and David Black, who were working at the club that evening, armed and attired in police uniform. In the course of leaving the club and heading toward the hotel, members of the group engaged in heated arguments and vandalism of property and were pursued by officers Speth and Black.

Plaintiff was eventually arrested by Speth. Plaintiff was injured when Speth's gun discharged while Speth was in the course of handcuffing him.

Following the incident, Plaintiff was charged with eleven criminal offenses. Plaintiff was found guilty of resisting arrest and public intoxication. Charges of aggravated assault and terroristic threats were dismissed and Plaintiff was acquitted of the remaining charges. It was determined that Plaintiff, an All–American academic and athlete and recent college graduate with no criminal record, had a blood alcohol level of .237.

Plaintiff filed a nine-count complaint against Speth, the City and two corporate defendants, but the case proceeded to trial only against the City. During trial, Plaintiff voluntarily dismissed Counts II–IX and

proceeded only on Count I, a civil rights claim under 42 U.S.C. § 1983. In pertinent part, Count I avers that: 1) Plaintiff's arrest was in violation of his right under the Fourth Amendment to be free from unreasonable arrest and his right under the Fourteenth Amendment to due process of law, 2) the arrest was made under color of Speth's authority as a City police officer and 3) the arrest was a direct outgrowth and result of the City's policy and practice of permitting off-duty police officers to work as armed security guards at establishments serving alcoholic beverages without adequate instructions regarding the circumstances under which they may unholster their service revolver and without adequate monitoring or supervision.

At trial, Plaintiff presented evidence that secondary employment within the City is authorized by a written regulation. Police officers can obtain secondary employment in one of two ways: 1) by requests filed through the office of Chief of Police or 2) by separate negotiations with employers. The City's regulation prohibits off-duty officers from working at establishments that serve alcoholic beverages. However, in practice, the prohibition does not apply where employment is limited to outside areas of such establishments.

Plaintiff's expert testified that the City's secondary employment policy did not conform to the model standards set forth in the International Association of Chiefs of Police (IACP) Model Policies. Where police powers are likely to be used, the IACP model policy requires control and supervision, to insure that officers comply with department rules and regulations.

Plaintiff presented evidence that, although Speth had not filed an application for secondary employment, the City was aware of his secondary employment at Confetti's. The City had received complaints from several individuals who alleged that Speth had been physically abusive to them while they were inside or outside Confetti's. Documentary evidence reflected that the City's Public Safety Director and the City's Deputy Chief of Police in charge of professional responsibility were concerned that the sanctioned off-duty employment of police officers was not well controlled.

The parties offered conflicting versions of the events immediately preceding the shooting. According to Plaintiff, he left the bar as requested and followed a friend toward the hotel, and he was neither involved nor aware of the arguments and acts of vandalism engaged in by his companions. Speth obtained a ride from a security guard patrolling the mall, entered the car with his gun drawn and proceeded with his gun pointed out the car window. Plaintiff was walking toward the hotel when Speth exited the car with his weapon pointed at Plaintiff. Speth told Plaintiff that he was under arrest and ordered him to the ground. Plaintiff had raised his hands and had begun to lower himself when Speth rushed to his side, kicked his legs out from under him and slammed the barrel of the gun into Plaintiff's back. Speth's gun discharged into Plaintiff's back and the bullet went through his lung.

The City's version of the facts differed from Plaintiff's in significant respects. According to the City's account, Plaintiff was observed committing acts of vandalism as he and his companions proceeded through the mall area. While Officers Speth and Black were chasing two of Plaintiff's companions, Speth observed one man pull a shiny four-inch object out of his pocket. An off-duty fireman accompanying the officers cautioned Speth that one man had pulled a weapon. Speth noticed a man, who turned out to be Plaintiff, standing in the distance and obtained a ride toward him from the mall security guard. Upon reaching Plaintiff, Speth advised him that he was under arrest. After repeated orders to get on the ground and upon Speth aiming his gun directly at Plaintiff, Plaintiff got down on his hands and knees. When Plaintiff did not comply with Speth's orders to get down on the ground, Speth swept Plaintiff's knee out from under him.

Speth moved to handcuff Plaintiff with his gun pointed toward the ground and his finger off the trigger. When Speth reached for his handcuffs, Plaintiff jerked his shoulder back, knocking Speth off balance. At that point Speth's weapon accidentally discharged.

In addition to evidence rebutting Plaintiff's version of the facts, the City offered expert testimony by Dr. Charles Winek, a toxicologist.[1] Dr. Winek opined that the City's description of Plaintiff's conduct as unruly and violently boisterous would be consistent with the behavior of a person whose blood alcohol level was .237. Dr. Winek stated that, despite Plaintiff's intoxication, Plaintiff would still have been able to swing his upper body backward while lying on the ground. Dr. Winek also testified that alcohol consumption impairs a person's ability to recall events accurately.

The jury returned a verdict upon special interrogatories, finding that: Speth's conduct was negligent, but was not grossly negligent and did not shock the conscience; Speth's conduct was a substantial factor in bringing about Plaintiff's harm; the City had a policy and/or custom constituting deliberate indifference to the safety of its citizens; and the City's policy was a substantial contributing factor in bringing about Plaintiff's harm. The jury awarded Plaintiff damages for out-of-pocket medical expenses not to exceed $22,802.29.[2]

■ Plaintiff filed a motion for post-trial relief, requesting a new trial on the issue of damages only, on the grounds that the award of damages for medical expenses only was against the weight of the evidence. Alternatively, Plaintiff requested a new trial on the issue of liability as it related to Speth's conduct, arguing that the trial court abused its discretion in allowing Dr. Winek to testify. The City also filed a motion for post-trial relief, arguing that it could not be liable under § 1983 as a matter of law, where the jury found that Speth's conduct was negligent, but did not shock the conscience. The trial court denied the motions and entered judgment on February 5, 1998. The instant appeals followed.[3]

The City first argues that in order for it to be held liable for Speth's conduct under § 1983, it must be shown that the City's policy caused Speth to inflict a constitutional injury, citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978),[4] and *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986).[5] The City argues that negli-

---

1. The trial court denied Plaintiff's motion in limine to exclude Dr. Winek's testimony.

2. The special interrogatories utilized by the trial court were virtually identical to Plaintiff's proposed interrogatories. (R.R. 731a–733a; 881a–883a.)

3. Our scope of review is limited to determining whether the trial court abused its discretion or committed clear legal error. *Milan v. Department of Transportation*, 153 Pa.Cmwlth. 276, 620 A.2d 721 (1993), *appeal denied*, 535 Pa. 650, 633 A.2d 154 (1993).

4. The *Monell* court held that a municipality could not be held liable under § 1983 solely on a respondeat superior theory. The court also stated that the language of § 1983 "plainly imposes liability on a government that, under color of some official policy, "causes" *an employee to violate another's constitutional rights." Id.* at 692, 98 S.Ct. 2018 (emphasis added).

5. In *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), a motorist filed suit under § 1983 against two police officers, police officials and the city, for injuries suffered during his arrest. The court held that a jury's finding in favor of a police officer was conclusive not only as to the officer but also as to the city and its officials, who were sued only because they were thought to be legally responsible for the officer's actions. The *Heller* court stated that:

   Neither *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer has inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations may have authorized the use of constitutionally excessive force is quite beside the point.
   *Id.* at 799, 106 S.Ct. 1571.

gence cannot serve as the basis for a constitutional injury and, in the absence of a constitutional injury inflicted by Speth, there can be no liability on the part of the City.

■ The United States Supreme Court has definitively held that, as a matter of law, negligence is insufficient to support liability under § 1983 generally, and under the due process clause of the Fourteenth Amendment specifically. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986);[6] *County of Sacramento v. Lewis*, 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (stating that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). In order to find a substantive due process injury, there must be a finding that the official conduct (here, Speth's conduct) was "conscience shocking". *Id.*

The City maintains that the jury's rejection of conscience shocking behavior by Speth precludes the finding of a Fourteenth Amendment violation on the part of the officer and the municipality. However, we conclude that the holding in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), requires that a different standard be applied in this case. In *Graham*, the plaintiff filed suit under § 1983 alleging that police officers had used excessive force in making an investigatory stop, in violation of his rights secured by the Fourteenth Amendment and § 1983. The *Graham* court first noted that § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. Therefore, the analysis in any § 1983 suit begins by identifying the specific federal constitutional right allegedly infringed. *Id.* The validity of the claim must then be judged by reference to the specific constitutional standard that governs that right. *Id.* The *Graham* court held that excessive force claims brought under § 1983 are properly analyzed under the Fourth Amendment "objective reasonableness" standard, rather than under the substantive due process standard.

The Fourth Amendment specifically guarantees the rights of individuals to be secure in their persons against unreasonable seizures. *Id.; Moody v. Philadelphia Housing Authority*, 673 A.2d 14 (Pa. Cmwlth.1996). Because the Fourth Amendment provides an explicit textual source of constitutional protection against the type of governmental conduct alleged herein ("unreasonable arrest"), we conclude that that Amendment, not the more generalized concept of "substantive due process," must be the guide for analyzing this claim. *See Graham*, 490 U.S. at 395, 109 S.Ct. 1865.[7]

■ The fact that a seizure occurred invokes the protection of the Fourth Amendment, and the question of whether that Amendment was violated requires a determination of whether the seizure was reasonable. *Id.* This analysis does not compel a different outcome in the present case, however, as it is well settled that unintended conduct cannot form the basis of a Fourth Amendment violation. *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

In *Brower*, the driver of a stolen automobile was killed at the end of a high

---

**6.** In *Daniels*, the court stated that a violation of substantive due process rights under the Fourteenth Amendment requires "deliberate decisions of government officials to deprive a person of life, liberty, or property." *Id.* at 331, 106 S.Ct. 662. The court explained that lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person, as opposed to an abuse of power, and refused to hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment.

**7.** We observe that, in the City's proposed interrogatories, the City characterized the claim presented as one of excessive force under the Fourth Amendment. (R.R. 884a–886a.)

speed chase when his vehicle collided with a truck that police had positioned to serve as a roadblock. The court held that the use of the roadblock constituted a seizure for purposes of the Fourth Amendment. The *Brower* court further held that a violation of the Fourth Amendment requires an intentional acquisition of physical control: "In sum, the Fourth Amendment addresses 'misuse of power' . . . not the accidental effects of otherwise lawful conduct." *Id.* at 596, 109 S.Ct. 1378 (citation omitted).

Relying on *Brower*, a number of courts more specifically held that negligence standing alone does not rise to the level of a constitutional violation in a Fourth Amendment case. *See Abraham v. Raso*, 183 F.3d 279 (3d Cir.1999); *United States v. Johnstone*, 107 F.3d 200 (3d Cir.1997); *Sturges v. Matthews*, 53 F.3d 659 (4th Cir.1995); *Roy v. City of Lewiston*, 42 F.3d 691 (1st Cir.1994); *Stone v. Agnos*, 960 F.2d 893 (9th Cir.1992); *Ansley v. Heinrich*, 925 F.2d 1339 (11th Cir.1991). In *Troublefield v. City of Harrisburg*, 789 F.Supp. 160 (M.D.Pa.1992), *aff'd*, 980 F.2d 724 (3d Cir.1992), a case factually similar to the one before us, the court held that no Fourth Amendment rights were violated where the plaintiff was injured by a bullet accidentally fired while a police officer was handcuffing him.[8]

Plaintiff does not contest the characterization of the shooting in this case as accidental, nor does he argue that negligence, under any analysis, will support a determination that Speth inflicted a constitutional injury. However, Plaintiff contends that a finding of liability against the City is not precluded by the jury's finding that Speth was negligent, because the City may be held independently liable for his injury. Plaintiff argues that the Third Circuit Court of Appeals has consistently held that municipal liability under § 1983 is to be decided separately and apart from the liability of its employees. Plaintiff also asserts that the jury's finding that the City's policy constituted "deliberate indifference" to his constitutional rights satisfies the standard for municipal liability under § 1983 as set forth in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Plaintiff relies in part on *Fagan v. City of Vineland*, 22 F.3d 1283 (3d Cir.1994), a case in which a car pursued at high speed by police crashed into an innocent bystander's vehicle, killing three people and injuring three others. The plaintiffs filed suit under § 1983, claiming that their due process rights were violated by the reckless manner in which police pursued the vehicle and by the city's policy or practice of not properly training its police with regard to high speed pursuits. The *Fagan* court held that,

> in a substantive due process case . . . an underlying constitutional tort can still exist even if no individual police officer violated the Constitution. . . . If it can be shown that the plaintiff suffered the injury, which amounts to a deprivation of life or liberty, because the officer was following city policy reflecting the [city's] deliberate indifference to constitutional rights, then the city is directly liable under Section 1983 for causing a violation of the plaintiff's 14th Amendment rights.

*Id.* at 1292. The *Fagan* court observed that it would be illogical to allow a municipality to escape liability because the police officer's conduct did not shock the conscience, when the city implemented a policy "which dictated his injury-causing actions." *Id.* The *Fagan* court determined that *Heller* was distinguishable, in part because in *Heller*, the city was sued only because it was thought to be legally responsible for the police officer's actions,

**8.** *But see Patterson v. Fuller*, 654 F.Supp. 418 (N.D.Ga.1987) (negligence may rise to the level of a constitutional violation). The *Patterson* case has not been followed by other jurisdictions.

while the plaintiffs in *Fagan* brought separate, independent claims against the city.[9]

The City counters that Plaintiff waived his right to raise the issue of independent municipal liability, for three reasons: 1) Plaintiff failed to plead an independent cause of action against the City; 2) Plaintiff specifically argued to the trial court that his theory of liability against the City depended upon a finding of culpability on the part of Speth; and 3) Plaintiff proposed special interrogatories that specifically coupled the City's liability with the culpability of its police officer.

Our review of the record confirms that Plaintiff pleaded but one § 1983 cause of action, i.e., that Speth violated Plaintiff's constitutional rights and that Speth's violation of Plaintiff's constitutional rights was caused by the City's policy or practice. The complaint does not set out a separate and independent cause of action against the City; rather, it merely alleges that Speth's violation of Plaintiff's constitutional rights was a result of the City's policy, such that the City can be held liable for Speth's conduct.

The record also reflects that at trial, Plaintiff's theory of liability against the City was premised upon, and derivative from, the conduct of the City's police officer. R.R. 370a, 377a, 378a. Plaintiff's proposed special interrogatories, adopted by the trial court, are further evidence of this fact, as they 1) first required the jury to make a finding regarding the conduct of Speth and 2) instructed the jury not to answer questions regarding the City's culpability and return to the courtroom if they did not find Speth's conduct to be either negligent, grossly negligent, or conscience shocking. R.R. 731a–733a.

■ For these reasons, we conclude that Plaintiff waived the right to raise the issue of whether the City can be held independently liable for his injury in this appeal.[10] *See Department of Transportation, Bureau of Driver Licensing v. Boros*, 533 Pa. 214, 620 A.2d 1139 (1993) (appellate court does not sit to review questions that were neither raised, tried, nor considered in the trial court). Under the circumstances of *this* case, Plaintiff was required to prove that Speth's conduct deprived him of a constitutional right, guaranteed by the Fourth Amendment, in order for the City to be held liable for his injury under § 1983.

Having so concluded, we turn to Plaintiff's argument that the trial court erred in admitting the testimony of Dr. Winek.[11] Plaintiff raises this issue in the alternative only in the event this Court decides that Plaintiff was required to prove that

---

**9.** Plaintiff also quotes language from *City of Canton* in support of his assertion that the City may be found independently liable for his injuries. Although that case has been relied upon by the Third Circuit for this proposition, we observe that the decision in *City of Canton* assumes that a municipal employee had inflicted a constitutional injury.

**10.** Having so decided, we decline to address the City's argument that *Fagan* was wrongly decided in that it failed to apply the analysis set forth by the Supreme Court in *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) and other cases. *Fagan* was criticized in *Mark v. Borough of Hatboro*, 51 F.3d 1137 (3d Cir. 1995), but cited as controlling authority in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir.1996).

In addition, we need not address the remaining issues raised by the City, which are as follows: whether the trial court erred in denying its motions for summary judgment and judgment on the pleadings; whether the trial court erred in entering judgment without requiring Plaintiff to prove the amount of his out-of-pocket medical expenses; and whether the trial court erred in awarding Plaintiff delay damages.

**11.** The admissibility of evidence, including expert testimony, is a matter entrusted to the sound discretion of the trial court, and such ruling will not be disturbed on appeal unless an abuse of discretion is shown. *Chicchi v. Southeastern Pennsylvania Transportation Authority*, 727 A.2d 604 (Pa.Cmwlth.1999), *appeal denied*, 560 Pa. 750, 747 A.2d 371 (1999). In order for the admission of evidence to constitute reversible error, it must be shown that the admission of the evidence was not just erroneous but also harmful to the complaining party. *Nebel v. Mauk*, 434 Pa. 315, 253 A.2d 249 (1969).

Speth's conduct was reckless or conscience shocking, i.e., deprived him of his *right to due process,* as a predicate to establishing the City's liability under the Fourteenth Amendment. However, we have determined that Plaintiff's claim is properly analyzed under the Fourth Amendment "reasonableness standard," rather than under the substantive due process standard. Therefore, Plaintiff has limited our consideration of this issue to an analysis that cannot be applied in this case.

In conclusion, we hold that Plaintiff's claim of an unreasonable arrest invokes the protection of the Fourth Amendment. Because *Brower* and the cases which followed it make clear that an accidental shooting cannot form the basis for liability under the Fourth Amendment, we reverse the order of the trial court and direct that upon remand the trial court shall enter judgment for the City.

## *ORDER*

NOW, May 30, 2000, the order of the Court of Common Pleas of Allegheny County denying the motion of the plaintiff, Brian L. Tristani, for post-trial relief is affirmed.

The order of the Court of Common Pleas denying the motion of the City of Pittsburgh for post-trial relief is reversed and the case is remanded and the trial court is directed to enter judgment in favor of the defendant, City of Pittsburgh, and against the plaintiff, Brian L. Tristani.

Jurisdiction relinquished.