James C. TRENTON, Sr., Frederick A. Ringbloom, Harry G. Barlow and Earl L. Owens, Individually and on behalf of the class of employees of Scott Paper Company excluded from participation in the Highly Accelerated Retirement Program, Appellants,

v.

SCOTT PAPER COMPANY, and Retirement Board of Scott Paper Company Salaried Employees Retirement Plan.

No. 87–1176.

United States Court of Appeals, Third Circuit.

Argued Sept. 29, 1987.

Decided Nov. 9, 1987.

Rehearing and Rehearing En Banc Denied Dec. 4, 1987.

reflected in these cases.

---

**6.** As Mrs. Cowgill concedes, the trial judge correctly charged the jury with respect to the law

Leo A. Hackett (argued), Fronefield & deFuria, Media, Pa., for appellants.

Patrick W. Kittredge, Kittredge, Kaufman & Donley, Philadelphia, Pa., Roberts B. Owen (argued), Douglas R. Davies, Covington & Burling, Washington, D.C., for appellees.

Before SEITZ, GREENBERG, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

### I. JURISDICTION AND SCOPE OF REVIEW

Appellants appeal from the order of the district court granting appellees' motion for summary judgment and denying appellants' motion for summary judgment.

The district court had jurisdiction under 29 U.S.C. §§ 216, 1132(e)–(f), 1303, 28 U.S.C. § 1331 (1982), and the doctrine of pendent jurisdiction. We have jurisdiction under 28 U.S.C. § 1291 (1982).

The scope of our review is plenary when reviewing grants of summary judgment. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

### II. FACTS

Appellee Scott Paper Company ("Scott") is the sponsor of a number of employee benefit plans, including the Scott Paper Company Salaried Employees Retirement Plan ("SERP"). Scott also sponsors the Scott Highly Accelerated Retirement Program ("SHARP"), which is the subject of the instant appeal. Of the salaried Scott employees who are eligible for SERP, some employees are also eligible for SHARP. Appellants are the class of salaried employees of appellee Scott who are excluded from SHARP. Appellee Retirement Board of Scott Paper Company Salaried Employees Retirement Plan ("Retirement Board") is the managing board of SERP.

In an effort to provide an incentive to salaried employees at certain designated facilities to retire early and thereby reduce the salaried workforce at those facilities, Scott designed SHARP. The impetus for Scott's action was Scott's determination that those facilities were overstaffed. SHARP was implemented when the Retirement Board amended SERP to provide for the SHARP program in addition to the already-existing SERP plan. A comparison of the workings of SERP and SHARP is necessary to understand appellants' claims.

SERP provides for two types of retirement. Under SERP, a salaried employee of Scott can retire with full benefits at age sixty-two or elect early retirement with reduced benefits at any time after reaching age fifty-five. If an employee elects early retirement under SERP, the employee's pension benefits are reduced by 5% for each year that the employee is under age sixty-two. The SHARP plan, *inter alia*, eliminated the 5% per year penalty and allowed early retirement at age fifty-two. Thus, SHARP provided a far more attractive plan of early retirement than that otherwise available under SERP. SHARP was implemented to encourage early retirement at certain Scott facilities and thereby reduce the workforces at those facilities. Accordingly, SHARP was made available only to salaried employees of those facilities who met its age and service requirements.

Appellants brought an action in the United States District Court for the Eastern District of Pennsylvania. They alleged that the adoption and implementation of SHARP violated their statutory rights under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 301–1461 (1982), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1982), as well as certain state law rights. The district court granted appellants' motion for class certification and defendants' motion for summary judgment. This appeal followed.

### III. THE ERISA CLAIMS

#### A. *ERISA Title I*

Appellants begin with the premise that administrators of pension plans under ERISA are bound by a fiduciary duty to the beneficiaries in the administration of such plans. Appellants contend that the Retirement Board breached this duty by adopting and implementing SHARP for the benefit of Scott and not for the benefit of all SERP participants and beneficiaries.

Appellees' retort that the decision to offer SHARP to a limited number of Scott employees was a *design* decision rather than an *administration* decision. Appel-

lants point to no ERISA provision that requires an employer to provide identical benefits to employees when the employer designs a plan. Appellees contend that the administrators of a pension plan have a fiduciary duty to the plan's participants *only* with regard to administration decisions and are bound by no such duty with regard to design decisions. Accepting appellees' reasoning, the district court held that the Retirement Board had no fiduciary duty with respect to the adoption and implementation of SHARP.

If SHARP had been a part of SERP when SERP was implemented, SHARP would clearly be part of the *design* of the plan. Appellants ground their argument that they have been treated unequally, in violation of a fiduciary duty owed them, on the fact that SHARP was implemented as an *amendment* to SERP. Specifically, they contend that the Retirement Board breached its fiduciary duty to them by amending SERP to give the SHARP benefit to some Scott employees and not to others. Appellants argue that amending a plan is an administration decision rather than a design decision.

ERISA provides that "a person is a fiduciary with respect to a plan to the extent [that] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A) (1982). Thus, we must determine who had the authority to design and implement SHARP. We think it clear in this action that Scott, not the Retirement Board, had the sole authority to determine who would be eligible for SHARP. The design of the SHARP plan was purely a corporate management decision. It defies common sense to suggest that a corporation must allow a retirement board to make personnel decisions such as determining which plants need fewer employees. Therefore, we find that the Retirement Board had no authority to alter the terms of SHARP or to refuse to adopt SHARP. Accordingly, we agree with the district court that although the Retirement Board was the entity that formally amended SERP to adopt SHARP, the Retirement Board had no fiduciary duty with respect to the adoption of SHARP.

■■ Similarly, we find no breach of fiduciary duty in the Retirement Board's implementation of SHARP. Appellants' attack on the implementation takes two tracks: 1) the implementation of SHARP improperly benefitted Scott and 2) the implementation of SHARP improperly benefitted only *some* SERP beneficiaries. The first contention is easily dismissed: although a fiduciary has a duty to act for the exclusive benefit of trust beneficiaries, ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) (1982), the fact that a fiduciary's action incidentally benefits an employer does not necessarily mean that the fiduciary has breached his duty. Appellants suggest that Scott was using SERP participants' money—the SERP surplus—to fund SHARP for the benefit of Scott, i.e., to make Scott's operation more efficient. From this premise, appellants attempt to show that the Retirement Board's implementation of SHARP was not for the exclusive benefit of trust beneficiaries. This contention ignores the fact that Scott funded and will continue to fund SERP. The only benefit received by Scott was the indirect benefit of enhanced efficiency. Appellants have cited no binding case law suggesting that such consequential benefit to an employer is impermissible under ERISA. Use of the SERP surplus to pay SHARP benefits in no way decreases either appellants' rights under SERP or Scott's obligation to fully fund SERP. Thus, appellants fail in their argument that the Retirement Board improperly diverted funds to Scott's benefit.

■ Appellants' argument that the implementation of SHARP improperly benefitted only some of SERP's participants is answered by our conclusion that the Retirement Board had no authority to specify the plants at which employees would be eligible for SHARP. Without such authority, there is no fiduciary duty. Similarly, appellants' contention that the Retirement Board violated the express terms of SHARP has no

merit. Appellants note that SHARP provides that SHARP is to be made available "in a non-discriminatory manner." Discrimination is the disparate treatment of those who are similarly situated. Before the adoption of SHARP, Scott determined which of its plants were overstaffed and which were "lean." Thus, Scott classified its employees into two categories; the Retirement Board had no authority to alter the makeup of those categories. Employees at overstaffed plants and employees at "lean" plants are not similarly situated. Accordingly, we find that the Retirement Board did not breach the express language of SHARP by offering SHARP only to employees at plants that Scott found to be overstaffed.[1]

## B.  *ERISA Title II*

■ Appellants contend that SERP as amended by SHARP is a "top-heavy" plan within the meaning of the Internal Revenue Code. *See* I.R.C. § 416(g) (1982). If true, a loss of tax benefits would result. Citing the four-factor analysis of *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), appellants argue that this fact gives them an implied cause of action for a violation of Title II of ERISA.

The district court rejected this claim as not properly before it. In so doing, the district court noted that appellants had raised this claim for the first time in their motion for summary judgment. Accordingly, the district court rejected the claim as outside the scope of the pleadings as well as not a matter of record. Citing *Massachusetts Mut. Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the district court stated that even if the plaintiffs were given the opportunity to incorporate this claim in an amended complaint, the claim would fail.

Assuming, without deciding, that appellants' claim was appropriately before the district court, we find no merit in the claim. Appellants cite no provision of ERISA indicating that the creation of a top-heavy plan violates ERISA. The mere fact that

ERISA sets forth requirements for qualification of plans does not lead one to conclude that the failure of a plan to meet these requirements is a "violation" of ERISA. Even assuming, *arguendo*, that the creation of a top-heavy plan violates ERISA, the application of the *Cort* test suggests that no private cause of action should be implied in this case. Two of the four *Cort* factors support appellants' claim: appellants are members of the class for whose benefit ERISA was enacted and ERISA's preemptive effect indicates that there is no state-law impediment to implying a remedy. However, the remaining two *Cort* factors—legislative intent and consistency with the legislative scheme—militate against appellants' claim.

In *Russell*, the United States Supreme Court stated that "unless [the] congressional intent [to provide an implied private cause of action] can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." 473 U.S. at 145, 105 S.Ct. at 3092 (quoting *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981)). The *Russell* Court concluded that the civil enforcement provisions of section 502(a) of ERISA provide strong evidence that Congress did not intend to authorize other remedies for ERISA violations that it did not incorporate expressly. *Id.* 473 U.S. at 145–48, 105 S.Ct. at 3092–94. While the *Russell* Court was deciding a type of claim different from that in the instant case, we find the Court's statements regarding the comprehensive remedial structure of ERISA instructive. Accordingly, we find it inappropriate to imply a private cause of action under ERISA for the creation of a top-heavy plan. In so holding, we express no opinion as to whether appellants produced sufficient evidence to suggest that SHARP was, in fact, topheavy.

## IV.  THE ADEA CLAIMS

■ Appellants also contend that the adoption and implementation of SHARP vi-

---

1.  In light of this conclusion, we need not address the district court's finding that the "non-

discriminatory" language of SHARP was included solely for tax considerations.

olates ADEA. This contention is without merit. ADEA proscribes discrimination based on age. Appellants are ineligible for SHARP because of the locations in which they work, not because of their ages.

Appellants attempt to argue that SHARP had a discriminatory impact because some employees who were eligible for SHARP were younger than the employees who were ineligible for SHARP. Without more, this does not support a finding of discrimination. Arguably, *any* early retirement incentive program gives more benefit to younger workers than to older ones. While appellants argue that alternative plans would be more fair to all SERP participants, appellants fail to allege facts sufficient to show any discrimination or discriminatory impact related to age. Thus, their ADEA claims fail.

## V. THE STATE LAW CLAIMS

In addition to their federal statutory claims, appellants made several state law claims. Having disposed of the plaintiffs' federal claims, the district court dismissed the plaintiffs' state claims without prejudice. The district court reasoned that it was appropriate to dismiss the state claims because the federal claims had been dismissed before trial. Appellants contend that the claim of appellant Owens should not be dismissed if appellants' federal claims are remanded. Because we affirm the district court's grant of summary judgment on appellants' federal claims, we do not find that the district court abused its discretion when it dismissed the state law claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

## VI. CONCLUSION

In light of the foregoing discussion, the judgment of the district court will be affirmed.