

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-25-1999

# Noorily v. Thomas & Betts Corp.

Precedential or Non-Precedential:

Docket 98-6298, 98-6392, 98-6432

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Noorily v. Thomas & Betts Corp." (1999). *1999 Decisions.* Paper 234.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/234

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 25, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-6298, 98-6328,
and 98-6432

PETER NOORILY; RAYMOND P. NASTAWA

v.

THOMAS & BETTS CORPORATION; EMPLOYEE
BENEFIT PLAN OF THOMAS & BETTS CORPORATION

(D.C. Civil No. 93-2227)

SIDNEY LEVY

v.

THOMAS & BETTS CORPORATION; EMPLOYEE
BENEFIT PLAN OF THOMAS & BETTS CORPORATION

(D.C. Civil No. 93-2228)

WILLIAM O. DECK

v.

THOMAS & BETTS CORPORATION; EMPLOYEE
BENEFIT PLAN OF THOMAS & BETTS CORPORATION

(D.C. Civil No. 93-2229)

       Thomas & Betts Corporation; Employee
       Benefit Plan of Thomas & Betts Corporation,

       Appellants in No. 98-6298

PETER NOORILY; RAYMOND P. NASTAWA

v.

THOMAS & BETTS CORPORATION; EMPLOYEE
BENEFIT PLAN OF THOMAS & BETTS CORPORATION

(D.C. Civil No. 93-2227)

SIDNEY LEVY

v.

THOMAS & BETTS CORPORATION; EMPLOYEE
BENEFIT PLAN OF THOMAS & BETTS CORPORATION

(D.C. Civil No. 93-2228)

WILLIAM O. DECK

v.

THOMAS & BETTS CORPORATION; EMPLOYEE
BENEFIT PLAN OF THOMAS & BETTS CORPORATION

(D.C. Civil No. 93-2229)

> Peter Noorily; Raymond P. Nastawa;
> Sidney Levy; William O. Deck,
>
> Appellants in No. 98-6328

PETER NOORILY; RAYMOND P. NASTAWA

v.

THOMAS & BETTS CORPORATION; EMPLOYEE
BENEFIT PLAN OF THOMAS & BETTS CORPORATION

(D.C. Civil No. 93-2227)

SIDNEY LEVY

v.

THOMAS & BETTS CORPORATION; EMPLOYEE
BENEFIT PLAN OF THOMAS & BETTS CORPORATION

(D.C. Civil No. 93-2228)

2

WILLIAM O. DECK

v.

THOMAS & BETTS CORPORATION; EMPLOYEE
BENEFIT PLAN OF THOMAS & BETTS CORPORATION

(D.C. Civil No. 93-2229)

        Thomas & Betts Corporation; Employee
        Benefit Plan of Thomas & Betts Corporation,

        Appellants in No. 98-6432

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 93-02227/28/29)
District Judge: Honorable Katharine S. Hayden

Argued: July 15, 1999

BEFORE: GREENBERG and ALITO, Circuit Judges,
and STAFFORD,* District Judge

(Filed: August 25, 1999)

        Paul Z. Lewis (argued)
        Lewis & McKenna
        82 East Allendale Road
        Saddle River, NJ 07458

        Attorneys for appellants-cross
        appellees Thomas & Betts Corp.
        and Employee Benefit Plan of
        Thomas & Betts Corp.
_____

*Honorable William H. Stafford, Jr., Senior Judge of the United States
District Court for the Northern District of Florida, sitting by
designation.

3

        Peter S. Pearlman (argued)
        Audra DePaolo
        Cohn Lifland Pearlman Hermann
         & Knopf
        Park 80 Plaza West One
        Saddle Brook, NJ 07663

        Attorneys for appellees-cross
        appellants Peter Noorily,
        Raymond P. Nastawa, Sidney
        Levy, and William O. Deck

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. FACTUAL AND PROCEDURAL HISTORY

A. Introduction

This matter comes on before this court in this action under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. SS 1001 et seq ., on the defendants' appeal from orders of the district court entered August 6, 1998, awarding severance benefits and October 19, 1998, awarding the plaintiffs attorney's fees and prejudgment interest. In addition, the matter is before this court on the plaintiffs' cross-appeal from an order entered August 17, 1995, dismissing plaintiffs' appeal to the district court from a magistrate judge's order imposing sanctions on the plaintiffs and from a subsequent order of the district court on June 23, 1998, expanding the sanctions by precluding the plaintiffs from offering certain testimony at trial. This litigation stems from the defendant Thomas & Betts ("T&B") Corporation's decision to relocate particular business operations and employees from Bridgewater, New Jersey, to Memphis, Tennessee, and its related determination that certain employees who refused to relocate would not receive benefits under its severance plan. T&B manufactures and sells connectors, fittings and wiring accessories for the electrical and electronic industries. Plaintiffs Peter Noorily, Raymond Nastawa, Sidney Levy and William Deck were

4

product engineers in T&B's Electrical Division in Bridgewater who refused to relocate to Memphis.

B. Factual History

In November 1991, T&B signed an agreement to acquire American Electric, a manufacturer of electrical products and accessories. Inasmuch as T&B then decided to relocate its Electrical Division to Memphis it held meetings in early December 1991 to inform its employees of the impending relocation. In at least one of these meetings T&B's management, in response to a question posed by a product engineer, stated that employees choosing not to relocate would receive severance payments from T&B's unfunded benefit plan. Additionally, Richard Lovell, then director of Human Resources in T&B's Electrical Division, told Noorily and Levy that T&B would make severance payments to employees who decided not to relocate. Plaintiffs, however, do not dispute T&B's assertion that it wanted them to relocate to Memphis and they concede that "this action does not involve any claims of discrimination." Br. at 21.

On December 6, 1991, Lovell issued a memorandum discussing T&B's severance policy in connection with the relocation. Although T&B marked the memorandum confidential and intended it merely to be a guide to managers seeking to answer employee questions, it acknowledges that the memorandum was circulated widely among the employees. The memorandum stated that T&B would deny severance benefits only to employees who left prior to the release date or who agreed to relocate and then changed their minds. Moreover, it specified that employees who chose not to relocate but who remained with T&B until the release date would receive severance payments. At that time, T&B's severance policy provided for benefits to employees who were "involuntarily terminated" when "the terminating manager believes the granting of such pay is appropriate."

T&B's management made the statements concerning severance benefits believing that a large majority of the 35 product managers and engineers in its Electrical Division would relocate. T&B regarded their relocation as critical because it viewed its product managers and engineers as

5

"key" employees. By the end of December 1991, however, T&B's management recognized that many of the product engineers did not want to relocate. T&B was concerned about their reluctance as it considered that the engineers' absence could affect the success of the pending merger. Moreover, T&B's management decided that it would be counterproductive to offer the engineers who refused to relocate severance benefits as the benefits themselves would encourage them not to relocate. Therefore, Kevin Dunnigan, the president of T&B, determined that any engineer whom T&B asked to relocate, but who refused, would not receive severance benefits because T&B would consider the refusal as a voluntary resignation. The plaintiffs received a memorandum on January 6, 1992, informing them of this decision but each objected to T&B's position and refused to sign an attached document indicating he was resigning. There can be no doubt that T&B's stated wish that the engineers relocate was not pretextual as T&B offered them substantial financial incentives to do so.

The plaintiffs, however, for compelling personal reasons decided not to relocate. All had longstanding ties to their communities as well as obligations to family members. Further, the plaintiffs considered their age and T&B's refusal to guarantee them long-term work in Memphis as reasons not to relocate. Thus, Noorily was 61 years old at the time of the relocation and had worked for T&B for over 22 years. With his wife, he was responsible for caring for both his mother and mother-in-law, who was nearly bedridden. Nastawa was 45 years old in January 1992, and had worked for T&B for 17 years. He also cared for his extremely ill mother-in-law and had children attending school in New Jersey. Furthermore, his wife had an established career in the area. Levy had worked for T&B for over 20 years at the time of the relocation and was 59 years old. He and his wife provided care to his mother and mother-in-law. Finally, Deck was 59 years old at the time of the relocation and had worked for T&B for over 25 years. Like the other plaintiffs, he had significant family responsibilities as he was the primary caregiver for his ill mother. Inasmuch as the plaintiffs would not relocate, Noorily's and Nastawa's employment with T&B ended on

6

February 14, 1992, and Deck and Levy, each of whom performed transition work for T&B, left the company in June and September 1992, respectively.

## C. Procedural History

Noorily and Nastawa originally filed suit in the Superior Court of New Jersey alleging that T&B's refusal to pay them severance benefits was a breach of their employment contract. After T&B moved for dismissal on ERISA preemption grounds, the parties executed a stipulation of dismissal without prejudice. Then on May 19, 1993, Noorily and Nastawa filed this action as plan participants in the district court under ERISA S 502(a)(1)(B), 29 U.S.C. S 1132(a)(1)(B), against T&B and its Employee Benefit Plan seeking benefits they claimed were due to them under T&B's severance plan.1 Levy and Deck filed separate, similar complaints on that date in the district court. The district court consolidated the three actions in June 1997 at plaintiffs' request. As a matter of convenience we refer to the defendants simply as T&B.

On November 4, 1994, T&B moved for sanctions against plaintiffs' attorneys for having allegedly improper ex parte contacts with three former T&B employees. A magistrate judge granted the sanctions motion on December 6, 1994, and precluded plaintiffs from calling these witnesses at trial. The plaintiffs then appealed to the district court which, through Judge Bissell, on August 17, 1995, upheld the order and dismissed the plaintiffs' appeal. At the outset of the trial Judge Hayden, on T&B's motion, expanded the scope of the sanctions by prohibiting the plaintiffs and their witnesses from testifying at the trial with respect to representations by these improperly contacted employees.

The parties tried the case at a bench trial before Judge Hayden from June 23, 1998, to June 29, 1998. The court ruled in favor of the plaintiffs on July 7, 1998, in a comprehensive oral decision, finding that T&B had involuntarily terminated the plaintiffs' employment and had violated its fiduciary duty under ERISA by arbitrarily and

_____

1. It appears that the case could have proceeded under ERISA in the state courts. See ERISA S 502(e)(1), 29 U.S.C. S 1132(e)(1).

capriciously denying them severance benefits under its severance plan. In an August 6, 1998 judgment order, the court granted the plaintiffs substantial severance benefits, which included severance pay and medical benefits according to the schedule provided in T&B's plan. On plaintiffs' post-trial motion, the court by an order of October 19, 1998, awarded them attorney's fees, costs, and prejudgment interest.

T&B has filed timely notices of appeal both from the August 6, 1998 order awarding plaintiffs severance benefits and from the October 19, 1998 order granting them attorney's fees, costs, and prejudgment interest. The plaintiffs have cross appealed from the order dismissing the appeal from the imposition of sanctions against them as well as from the determination limiting the use at trial of evidence regarding the improperly contacted employees' representations. The district court had subject matter jurisdiction under ERISA S 502(e)(1), 29 U.S.C. S 1132(e)(1), and 28 U.S.C. S 1331, and we have jurisdiction under 28 U.S.C. S 1291.

II. DISCUSSION

A. Standard of review

We exercise plenary review on this appeal because the outcome determinative historical facts are not in dispute, and we accept the district court's factual findings. Thus, this case essentially involves questions of law"with respect to the legal effect" of the severance plan. Atacs Corp. v. Trans World Communications, Inc., 155 F.3d 659, 665 (3d Cir. 1998).

B. Was T&B Acting as a Fiduciary When It Decid ed That It Would Not Provide the Plaintiffs with Severance Benefits Under Its Severance Plan?

We first address T&B's contention that its determination to deny the plaintiffs severance benefits was a "business decision" immune from the standards that section 404 of ERISA, 29 U.S.C. S 1104, establishes for fiduciaries. In considering this point we note that T&B acknowledges that its severance policy was a "welfare plan" as that term is

8

defined in ERISA S 3(1), 29 U.S.C. S 1002(1). T&B's dual role as the plan's administrator as well as the employer, however, complicates our analysis. The plan clearly reflects this dual role as it provides that "[a]ll fringe benefits covered under this policy are administered by the Corporate Benefits Committee" which consists of certain T&B officers. On the other hand, the plan provides that an award of severance pay is made when "the terminating manager believes the granting of such pay is appropriate."

When an employer makes decisions about the design of a welfare plan, such as a severance plan, it functions as an employer and not as an administrator and thus it is not acting as a fiduciary. See Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 285 (3d Cir. 1988). Accordingly, an employer can create a plan that furthers its business interests, and it can act according to these interests in amending or terminating the plan. See Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1162 (3d Cir. 1990). Moreover, to the degree that the plan gives an employer discretion, the employer is not a fiduciary when it makes determinations according to the plan's terms that affect employees' eligibility for benefits. See Berger v. Edgewater Steel Co., 911 F.2d 911, 918 (3d Cir. 1990). Thus, in Berger, we held that the employer was not acting in a fiduciary capacity when it determined, as the plan permitted it to do, that the early retirement of certain employees was not in its best interest. See id. at 918-19. However, when the employer is administering the plan and paying out benefits, it acts as a fiduciary and must act in the interest of the plan's participants. See Hozier, 908 F.2d at 1158-59 (citing ERISA S 404, 29 U.S.C. S 1104, which establishes fiduciary standards under ERISA).

In sum, then, the employer acts as a fiduciary when administering a plan but not when designing a plan or making business decisions, even though in all three situations its determinations may impact on its employees. It is important to keep these distinctions in mind when considering an ERISA case.

As we have indicated, the severance plan in this case provided T&B with discretion in determining whether to award severance benefits for it provided for an award only

if the terminating manager thought that it was "appropriate" to do so. Inasmuch as the plan gave this discretion to T&B as an employer through its terminating manager rather than as an administrator through its Corporate Benefits Committee, T&B is correct in its contention that it was not acting in a fiduciary capacity when it determined that granting severance benefits to the plaintiffs would not be "appropriate" because it was not in T&B's interest to do so. Once T&B made this management determination, T&B as the administrator through its Corporate Benefits Committee was obliged to implement the decision and thus cannot be deemed to have violated its fiduciary duties by acting according to the "employer's" determination. See Berger, 911 F.2d at 918-19. Similarly, if T&B as employer had determined to award severance benefits then its Corporate Benefits Committee would have been obliged to implement that decision. The district court therefore erred in concluding that T&B had breached its fiduciary duties to the plaintiffs.

Nevertheless, our conclusion that T&B did not act in a fiduciary capacity in its determination to deny severance benefits does not end the case because the plaintiffs are not suing simply for breach of fiduciary duty. Rather, their complaint and their arguments at trial and in this court show that they believe that they are entitled to benefits under the plan and that T&B misapplied the plan in denying them benefits. Thus, they have predicated their claims on breach of contract principles and, upon a proper showing, the claims could be upheld on that basis under ERISA. See Kemmerer v. ICI Americas Inc., 70 F.3d 281, 287 (3d Cir. 1995). Of course, if we agree with the plaintiffs on their contract theory we can affirm even though we are rejecting the district court's reasoning that T&B violated its fiduciary obligations. See United States v. Soberon, 929 F.2d 935, 940 (3d Cir. 1991).2

_____

2. T&B argues that plaintiffs cannot recover on contract principles as the severance plan does not create "vested contractual" rights. In view of our result we have no need to address this point.

10

C. Does T&B's Severance Plan Entitle the Plain tiffs to
   Severance Benefits?

T&B argues that in rejecting the plaintiffs' claims for severance benefits, it properly exercised the discretion the plan allowed to it. In focusing upon the discretion granted in the plan, T&B invokes a body of case law providing that in cases brought under ERISA S 502(a)(1)(B), 29 U.S.C. S 1132(a)(1)(B), a court applies de novo review in construing an employee benefit plan unless "the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Ulmer v. Harsco Corp., 884 F.2d 98, 101 (3d Cir. 1989) (citing Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111, 109 S.Ct. 948, 954-55 (1989)). If the plan does grant such discretion, then a deferential standard of review is appropriate. See Bruch, 489 U.S. at 111-14, 109 S.Ct. at 954-57. However, these cases apply only to decisions reached by administrators or fiduciaries, not employers. As T&B itself has argued that it did not act as a fiduciary in denying benefits, it cannot now rely on this case law. Accordingly, in evaluating the plaintiffs' claims on breach of contract principles, these cases are not controlling.

The district court held that T&B involuntarily terminated the plaintiffs and that its decision to deny them benefits was arbitrary and capricious. Thus, the parties regard the court as having held that T&B "constructively discharged" plaintiffs, although in its opinion of July 7, 1998, the court did not explicitly so hold.3 In the circumstances the parties quite naturally focus on the constructive discharge issue. But we need not review the district court's decision that the plaintiffs were involuntarily terminated because, assuming without deciding that the district court was correct on that point, the plan provides for the granting of severance pay only when "the terminating manager believes the granting of such pay is appropriate."

Unquestionably ERISA permits corporations to create welfare plans that give their managers wide discretion. See,

---

3. The court did suggest, however, during oral argument at the conclusion of the trial that a constructive discharge and an involuntary termination were the same thing. App. at 1802.

11

e.g., McNab v. General Motors Corp., 162 F.3d 959, 962 (7th Cir. 1998). Indeed, it might be possible to read T&B's plan to render unreviewable the terminating manager's decision to deny severance benefits. Nevertheless we have no reason to consider that possibility for the district court's factual findings make it clear that T&B's decision to deny plaintiffs severance benefits was not "arbitrary or capricious" and thus we must uphold it. Of course, we refer to arbitrary or capricious with respect to T&B's conduct as an employer not as a fiduciary for, as we have explained, the cases establishing a standard for reviewing a fiduciary's conduct are not controlling. Clearly, there is a class of decisions that might be arbitrary when considered from the point of view of a plan participant that are perfectly appropriate for an employer.

T&B argues that we should use a "bad faith" standard in reviewing its conduct. This argument is substantial because in Berger, after we rejected the application of a fiduciary standard with respect to an employer's decisions denying requests for retirement, we indicated that the employer's determination nevertheless was "subject to no more than the minimal obligation of good faith." Berger, 911 F.2d at 919. We are aware, however, that other courts have applied an "arbitrary and capricious" standard for judicial review in circumstances similar to those here. See McNab, 162 F.3d at 962. While a "bad faith" standard would be more deferential than the "arbitrary or capricious" standard, we have no need to consider if it is applicable here as T&B did not act arbitrarily or capriciously and therefore it cannot possibly have acted in bad faith. Finally, on the standard of review issue, we point out that we cannot conceive how a court could impose a more exacting standard than that the employer's decision not be arbitrary or capricious.

The district court in reaching its result indicated that T&B's policy always has been to pay terminated employees, except those who left voluntarily, severance pay. Thus, when T&B moved its Electronic Division to South Carolina in 1990 it made severance payments to employees who declined to move.4 The court understandably also indicated

_____

4. The Electronic Division is apparently distinct from the Electrical Division.

12

that each of the plaintiffs had a compelling personal reason to decline T&B's offer of employment in Memphis. Moreover, the court indicated that "[o]ther than the engineers in the engineering department, all employees who did not move to Memphis received severance payment[s] in accord with [T&B's] policy."

The court further stated that T&B's management considered the plaintiffs to be critical employees but that T&B was thinking of its interests rather than those of the plaintiffs' in wanting them to move to Memphis. 5 Thus, the court said that it was only when T&B discovered the extent of the reluctance of the engineers to move that it determined that "anyone who did not transfer his position would not receive severance and would be considered as having resigned." Yet the court recognized that T&B perceived that its employees' unanticipated decision not to relocate was threatening its decision to move its Electrical Division.

Significantly, the court made the following findings:

> The management decision in this case which isolated the engineers who declined to transfer out of all others directly affected the administration of severance to all employees who did not relocate, and as such I find that it was a breach of fiduciary duty to administer the plan.
>
> I find the act of applying the severance plan benefits to all employees, whether they were going or staying, whether they were in transition, not in transition, was an act of welfare plan administration, and in so undertaking that act I find under the [Hozier v. Midwest Fasteners, 908 F.2d 1155] analysis that the company had a fiduciary duty to administer the plan with the benefit of the employees in mind and not its own management welfare in mind.

_____

5. The plaintiffs contend that they were not critical to T&B and that subsequent events have demonstrated it has prospered without their services. While plaintiffs may be correct in that assertion, their argument is immaterial because the significant fact is that, as the district court found, T&B thought that the engineers were critical, and we judge T&B's conduct on the basis of its view of the situation.

13

I find therefore that by arbitrarily denying welfare benefits to certain employees whose jobs were significantly affected by the acquisition and conferring those benefits arguably to people equally affected by the acquisition was a breach of that duty.

The court also indicated that "the uncontroverted testimony supports my analysis that in an effort to combat a threat to its management decision to [acquire] the Tennessee based company, management decided in midstream to administer its severance policy in a way that perverted the spirit and intent of the severance plan under ERISA and its own written policy."

Ultimately the court concluded that:

Overall then, I find the acquisition of American Electric created a termination event that required administration of severance plan to all employees. Those employees choosing to accept . . . an offer of continued employment were not terminated. Those declining the offer were effectively terminated under the circumstances established by the evidence, which include geographical distance of the relocation, the certainty of continued employment unameliorated by management, and foreseeable effects on family life which was specifically not considered on a individual basis by management.

Thus, the court believed "that management's withholding of these employees' severance pay was based on punitive coercive motives designed solely to protect and benefit the employer to the detriment of plaintiffs." Consequently, in the court's view the plaintiffs were entitled to severance benefits.

We cannot accept the district court's legal conclusions. First of all, of course, for the reasons we already have set forth we reject the district court's application offiduciary standards here. Moreover, we see no reason for concluding that "the terminating manager [who did not] believe[ ] the granting of [severance] pay [was] appropriate" was arbitrary or capricious in reaching that conclusion. In Berger we indicated "that only the employer determines whether an employee's retirement is in the company's best interest.

14

Neither the plan administrator nor the pension board have the authority to override the company's business decision." Berger, 911 F.2d at 918.

The T&B plan provided that the test for granting severance pay upon involuntary termination was whether the terminating manager believed "the granting of such pay is appropriate." We fail to see how the denial of severance pay was inappropriate as a business decision reached by T&B. Plainly, there was nothing arbitrary or capricious about T&B's decision to discourage employees it regarded as critical from terminating their employment. Indeed, the sincerity and reasonableness of T&B's decision was demonstrated by its willingness to absorb substantial expenses to relocate the plaintiffs.

The fact that in some other circumstances T&B awarded severance pay to other employees who would not relocate in no sense required it to find that it was appropriate to do so in plaintiffs' cases. Obviously, an employer may make a determination as to the appropriateness of granting severance pay based on the circumstances of each case and thus past practice cannot control its exercise of discretion in other circumstances. See McNab, 162 F.3d at 961-62; Nevill v. Shell Oil Co., 835 F.2d 209, 211 (9th Cir. 1987); cf. Nazay v. Miller, 949 F.2d 1323, 1336 (3d Cir. 1991) (administrator's decision). The district court's reasoning was flawed as it considered whether T&B was acting arbitrarily or capriciously as a fiduciary, and thus the court was taking into account only the interests of the employees as plan participants or beneficiaries. Viewed from the correct prospective, T&B plainly was not arbitrary or capricious in denying severance benefits and accordingly it is entitled to a judgment in its favor.

T&B also argues that the district court abused its discretion by awarding plaintiffs attorney's fees and costs under ERISA S 502(g)(1), 29 U.S.C. S 1132(g)(1), as well as prejudgment interest. Obviously, we have no need to linger on this point as the reversal of the award of severance benefits compels the reversal of the award of prejudgment interest and attorney's fees and costs because plaintiffs are no longer prevailing parties. Finally, T&B argues that the

15

district court erred in certain evidentiary rulings, but in view of our result this issue is moot.

We carefully have examined plaintiffs' cross-appeal with respect to the sanctions and find that it is clearly without merit. In any event, we find nothing in plaintiffs' brief to support a conclusion that the excluded evidence if admitted could have created a record that would have led us to reach a different result than the one we set forth. While plaintiffs suggested at trial that the testimony would establish T&B's liability, in view of our conclusions which are predicated on legal determinations based on the plan itself, we reject this contention.[6]

III. CONCLUSION

In closing our opinion we emphasize that while we are treating this case as involving involuntary terminations and that our result for this reason may seem harsh, the term "involuntary termination" must be understood in the context of this case. The parties agree that T&B wanted the plaintiffs to remain in its employ, and thus T&B offered them significant incentives to move to Memphis. Accordingly, this case is not one in which the employees were intentionally set adrift by an uncaring employer. Moreover, this case in no sense involved oppressive or intolerable employment conditions such as might have constituted a constructive discharge in a discrimination case. Quite to the contrary, this case concerns the effect on the plaintiffs of T&B's unassailable business decision to move its Electrical Division to Memphis. At bottom, then, this case involves nothing more than an employer determining that it is not appropriate to grant severance benefits to employees leaving their employment when the employer wishes them to remain.[7] We will not reject such a decision.

_____

6. It is questionable whether plaintiffs have preserved the sanctions issue
as they apparently intend to pursue it only if we remand the case for "a new trial." Br. at 51 n.10; Reply Br. at 1 n.1. Of course, we are not remanding for a new trial. Nevertheless, we are rejecting their contentions on the merits.

7. We also point out that the decision to deny severance pay did not nullify the plaintiffs' pension rights.

16

For the foregoing reasons the orders of August 6, 1998, and October 19, 1998, will be reversed, and the order of August 17, 1995, will be affirmed. The matter will be remanded to the district court for entry of a judgment in favor of T&B.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit