

Villanova University School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-6-2006

# Tobias v. PPL Elec Util Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2907

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Tobias v. PPL Elec Util Corp" (2006). *2006 Decisions.* Paper 482.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/482

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 05-2907

RICHARD TOBIAS,

<u>Appellant</u>

v.

PPL ELECTRIC UTILITIES CORPORATION;
PPL CORPORATION; EMPLOYEE BENEFIT PLAN BOARD OF
PPL CORPORATION AND PPL RETIREMENT PLAN

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-05861)
District Judge: Hon. Juan R. Sanchez

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 31, 2006

BEFORE: SMITH and  COWEN, <u>Circuit Judges</u>,
and ACKERMAN*, <u>District Judge</u>

(Filed: September 6, 2006)

*Honorable Harold A. Ackerman, Senior United States District Judge for the District of
New Jersey, sitting by designation.

OPINION

COWEN, Circuit Judge.

Richard Tobias appeals from a judgment entered by the District Court following a bench trial in favor of defendants PPL Electric Utilities Corporation, PPL Corporation, Employee Benefit Plan Board of PPL Corporation, and PPL Retirement Plan (collectively defendants or "PPL") in his suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, and the District Court's denial of his motion for a new trial and to alter or amend judgment pursuant to Federal Rule 59(a). For the reasons stated below, we will affirm.

## I.

Because we write for the parties, we recite only those facts necessary to our analysis. Richard Tobias is a former employee of PPL, where he worked for forty-two years until his retirement on April 1, 2003. In the spring of 2002, Tobias worked as a Right of Way Agent in PPL's Field Services Department and was assigned to the West Division. At that time, he was the most senior Right of Way Agent employed by PPL.

During the spring of 2002, PPL implemented the Operational Improvement Assessment Separation Program ("OIA"), a workforce reduction program which provided enhanced early retirement benefits to selected separating employees. The OIA was intended to "improve productivity while reducing costs," and, to that end, the company

predicted that it would "result in a reduction of the number of employees at the Company as well as a reduction in contractors, including consultants." (App. at 326.)

In furtherance of the OIA, each business line reviewed its staffing requirements and organizational structure. Based upon that review, the business line managers then recommended the elimination of specific work or functions to the appropriate company president or vice president and the Vice President of Human Resources. The OIA plan document instructed that "[w]hen the elimination of positions has been approved, representatives from Human Resources and managers from the company or departments involved will meet to develop a plan for the necessary staffing changes." (*Id.* at 327.) Specifically, with regard to the process of selecting incumbents for separation, the OIA plan document provided, in relevant part:

(a) For incumbents in an identified grouping of related positions as determined by the company, management may canvass employees to determine whether they have an interest in separating from employment. . . . If there are too many interested employees within an identified group, the employees with the most company service will be selected. If there are not enough employees interested in separation within the group, a selection process will be implemented within that group to determine the remaining separations.

(b) A selection process, which includes an interview, will be used whenever the business line determines that canvassing for interest in separation from employment is not desirable or when staffing requirements were not met through the canvassing process.

(*Id.* at 328.)

The OIA plan document further provided an appeal process for challenges concerning whether the selection procedures had been followed. The three-member

appeal panel consisted of the Vice President of Human Resources, the Director of Business Ethics and Compliance, and the Deputy General Counsel. The plan document stated that "[i]f the appeal panel determines that the established procedures were not followed, it will instruct the business line to correct any deviations from the procedures." (*Id.* at 329.) The decision of the appeal panel was final. (*Id.*)

Thomas Stathos, a PPL manager, was responsible for carrying out the OIA selection process for the employees in the Field Services Department. At the time of the selection process, all of the Right of Way Agents were assigned to one of two geographical divisions, specifically the East Division or the West Division. In approaching the process, Stathos grouped the Right of Way Agents by geographical division, which resulted in the creation of two groups of Right of Way Agents rather than one.

Based upon staffing needs, PPL management decided to terminate the services of a contractor in the West Division, and eliminate one Right of Way Agent position in the East Division. The termination of the contractor's services saved costs for the company since contractors could not be beneficiaries under the OIA. Following a canvassing process for the East Division, PPL offered an OIA separation package to East Right of Way Agent Barrie Perilla, who accepted the offer and separated from PPL.

None of the Right of Way Agents in the West Division were canvassed or selected for OIA separation. Tobias had six more years of company service than the East Right of

4

Way Agent who separated from PPL under the OIA. Tobias' appeal to the three-member Appeal Panel was denied.

Stathos was also responsible for implementing the OIA process for the Foresters in the Field Services Department. Like the Right of Way Agents, Foresters were assigned to either the East Division or the West Division. Unlike his approach with the Right of Way Agents, Stathos did not group the Foresters by geographical division, but, instead, grouped all of the Foresters together in a single group for OIA selection and canvassing purposes.

On October 1, 2003, J. Frank Michael, Jr., a Field Location Coordinator, retired from PPL. He was given separation benefits under the OIA despite the expiration of the OIA at the end of 2002.

## II.

Following a bench trial, we review a district court's conclusions of law *de novo* and its factual findings for clear error. *Kosiba v. Merck & Co.*, 384 F.3d 58, 64 (3d Cir. 2004). We review a district court's evidentiary rulings principally for an abuse of discretion. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2001). A district court commits an abuse of discretion when its action was "arbitrary, fanciful or clearly unreasonable." *Id.* (citation and internal quotation marks omitted). We will not disturb a district court's exercise of discretion unless "no reasonable person would adopt the district court's view." *Id.* (citation and internal quotation marks omitted).

## III.

5

A.

Before addressing Tobias' arguments on appeal, we must first consider PPL's preliminary argument that it was acting as an employer, not as a fiduciary under ERISA, with regard to its decisions challenged on appeal.

When an employer makes decisions about the design of an early retirement benefit plan, it functions as an employer and not as an administrator and, thus, is not acting as a fiduciary under ERISA. *Noorily v. Thomas & Betts Corp.*, 188 F.3d 153, 158 (3d Cir. 1999). Similarly, when a plan gives an employer discretion to make business decisions implementing the plan's terms, the employer is not acting as a fiduciary when it makes those business decisions. *Id.*; *Berger v. Edgewater Steel Co.*, 311 F.2d 911, 918 (3d Cir. 1990). Thus, for example, in *Noorily*, we held that an employer was not acting in a fiduciary capacity when it denied severance benefits under a plan that gave the employer, through its terminating manager, discretion to determine when an award of benefits was "appropriate." 188 F.3d at 159. Similarly, in *Berger*, we held that an employer was not acting in a fiduciary capacity when it determined, according to the plan's terms, that the early retirement of certain employees was not in the company's "interest." 311 F.2d at 918-19. Likewise, in *Trenton v. Scott Paper Co.*, 832 F.2d 806, 809-10 (3d Cir. 1987), we concluded that an employer was not acting in a fiduciary capacity when it designed and implemented an accelerated retirement program, which gave the company the authority to make personnel decisions, such as which plants needed fewer employees.

On the other hand, when the employer is merely administering the plan and paying out benefits, it acts as a fiduciary and must act in the interest of the plan's participants. *Norrily,* 188 F.3d at 158. "In sum, then, the employer acts as a fiduciary when administering a plan but not when designing or making business decisions allowed for by a plan, even though in all three situations its determinations may impact on its employees." *Id*. We have said that the determination as to whether an employer acts in the capacity of a business manager or an administrator involves a "sensitive analysis." *Nazay v. Miller*, 949 F.2d 1323, 1329 (3d Cir. 1991).

Here, Tobias does not challenge the company's design of the reduction-in-force program. He also does not challenge the terms of the OIA selection process themselves, which gave PPL the discretion to place "incumbents in an identified grouping of related positions as determined by the company." (App. at 328.) He does, however, challenge PPL's decisions implementing those terms with respect to the Right of Way employees in the Field Services Department. Tobias submits that all of the Right of Way Agents should have been grouped together because all of the Right of Way Agent positions entail the same job responsibilities. Tobias asserts that PPL abused its discretion when it grouped the Right of Way Agents by geographical division.

The determination of whether the grouping of related positions was a corporate matter or the act of a fiduciary depends upon the particular facts and circumstances of this case. We find it significant that individual business line managers had the authority to determine, and did determine, all of the grouping decisions, subject to the approval of the

7

manager of corporate staffing. There is no indication in the record that the Employee Benefit Plan Board had any authority to override these company determinations. Moreover, the OIA plan document did not prescribe any special rules for the grouping of related positions, but left the matter to the discretion of these company managers.

Based upon these facts, we view the grouping determinations as an essential step in the company's overall business assessment plan, requiring some knowledge on the part of the decision-makers as to the staffing needs of the business line in question. Conversely, we do not view the grouping task as a mere administrative benefits decision. Indeed, as we stated in *Trenton*, "it defies common sense to suggest that a corporation must allow a retirement board to make personnel decisions such as determining which [departments] need fewer employees." 832 F.2d at 809.

Nevertheless, because we do not think that this issue, which is fact-specific and involves a "sensitive analysis," *Nazay*, 949 F.2d at 1329, was adequately noticed and briefed by the parties, and for the sake of completeness, we will assume that PPL acted as a fiduciary with respect to the decisions challenged on appeal.

B.

Tobias argues on appeal that the District Court applied an insufficiently heightened arbitrary and capricious standard or, alternatively, applied the correct standard of review but reached the wrong result. We disagree, as to both arguments.

1.

Under the arbitrary and capricious standard, a court may overturn a decision of a plan administrator only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (citation and internal quotation marks omitted). "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Id.* (citation and internal quotation marks omitted).

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court instructed that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Id.* at 115 (citation and internal quotation marks and brackets omitted). Based upon that instruction, in *Pinto v. Reliance Standard Life Ins.*, 214 F.3d 377 (3d Cir. 2000), we adopted a sliding scale approach to cases involving an apparent conflict of interest, *id.* at 392, "calibrating the intensity of our [arbitrary and capricious] review to the intensity of the conflict," *id.* at 393.

Thus, we have held that when an employer is directly funding a portion of the plan and would thereby stand to benefit financially from the denial of a current employee's claim, a "somewhat heightened" standard of review applies. *Smathers v. Multi-Tool, Inc./Multi--Plastics, Inc. Employee Health and Welfare Plan*, 298 F.3d 191, 199 (3d Cir. 2002). Such a case presents a conflict of interest that, although not extraordinary, warrants a "more penetrating review of [an] administrator's decisionmaking process." *Id.*

9

In applying the sliding scale approach, a court may also take into account the sophistication of the parties, the information accessible to the parties, and the particular financial arrangement involved. *Pinto*, 214 F.3d at 392. It is also relevant whether the claimant seeking benefits was then the fiduciary's employee, as to whom there are conflict-mitigating factors such as loss of morale and higher wage demands, or a former employee, as to whom those mitigating factors are not present. *Kosiba*, 384 F.3d at 65. Finally, "demonstrated procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits" warrants a heightened standard of review. *Id.* at 66.[1]

In this case, defendants paid the enhanced early retirement benefits out of PPL's general corporate funds, and defendants stood to benefit from separating an employee with less company service. These circumstances alone warrant a slightly heightened arbitrary and capricious standard. *Smathers*, 298 F.3d at 199.

However, there are no other circumstances tending to heighten the standard of review. At the time of the implementation of the OIA, Tobias was a current employee of PPL and continued to work there for almost another year, which presented conflict-mitigating factors for PPL. Moreover, although PPL grouped the Right of Way Agents differently than it grouped the Foresters, there were no specific rules relating to the

---

[1] Because a court may consider unfairness and bias in applying the sliding scale approach to the standard of review, the District Court did not err in noting that there was no evidence of any company animosity toward Tobias.

grouping of related positions, and, thus, we find no procedural irregularities or unfairness particular to Tobias' situation.

Based upon these circumstances, and in accordance with *Pinto* and *Smathers*, we will apply a somewhat heightened arbitrary and capricious standard of review. In reviewing PPL's decisions, we will keep in mind its financial interest, and will conduct a "more penetrating review" of the decision-making process than we would normally conduct under the arbitrary and capricious standard. *Id.* at 199.

2.

Applying the slightly heightened arbitrary and capricious standard, we conclude that PPL's grouping of the Right of Way Agents based upon geographical assignment survives scrutiny. As noted above, there were no specific rules relating to the grouping of related positions, and the grouping decision was committed to the discretion of the company. PPL's decision to create two groupings of Right of Way Agents reflected the two geographical regions for their work assignments. Thus, there was a reasonable basis underlying its decision to divide the Right of Way Agents into two groups.

Furthermore, there is nothing in the OIA plan document that precluded the creation of multiple groupings within the same job function. The only requirement articulated in the OIA plan document was that each identified grouping consist of related positions, as

11

determined by the company.  Since each of the Right of Way Agent groupings consisted only of related positions, the OIA requirement was clearly satisfied.[2]

For these reasons, we conclude that PPL's grouping of Right of Ways Agents survives the slightly heightened arbitrary and capricious standard.

C.

Tobias also argues on appeal that the District Court abused its discretion in excluding evidence concerning J. Frank Michael, Jr.'s separation from PPL.  According to Tobias, although plan administrators paid enhanced early retirement benefits to Michael, PPL later filled his position.  Tobias argues that this evidence is relevant to his position that the plan administrators did not make decisions in accordance with the OIA's cost-saving purpose or on a consistent basis.

After considering the proffered evidence, we find no abuse of discretion with respect to the District Court's evidentiary ruling.  PPL's alleged staffing decisions with regard to Michael's position have little to no relevance to the denial of benefits in this case.  The undisputed record shows that Michael, a former PPL Location Field Coordinator ("LFC"), was not employed as a Right of Way Agent and did not work in the Field Services Department.  In addition, a different set of decision-makers were

---

[2] We note that PPL provided an additional reason for its decision to divide the Right of Way Agents into two separate groupings.  As explained by Stathos, the decision saved the company the expense of later relocating an agent from one division to the other.  However, we agree with Tobias that the argument is tenuous because the Foresters were not divided into two groupings despite the same possible relocation expense.

responsible for the reductions in the LFC business line.  For these reasons, we cannot conclude that the District Court's exclusion of evidence relevant to Michael's separation was clearly unreasonable.

D.

Tobias' final argument on appeal is that the District Court erred in failing to adhere to the doctrine of the law of the case.  Tobias posits that the District Court's findings in its final Memorandum and Order in favor of defendants conflict with its earlier findings in the summary judgment order.  We reject his argument.

"The law of the case doctrine limits the extent to which an issue will be reconsidered once the court has made a ruling on it."  *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994).  "The law of the case [doctrine] operates only to limit reconsideration of the same issue."  *Id.*  In addition, the doctrine does not preclude a trial judge from "clarifying or correcting an earlier, ambiguous ruling."  *Id.*

In its summary judgment order, the District Court considered PPL's contention that its decisions implementing the OIA plan were business decisions outside of the scope of ERISA.  In rejecting that contention, the District court stated that the plan "does not purport to reserve the right to pick and choose among employees to whom the benefit would be offered."  (App. at 32.)  Later, in its final Memorandum and Order, the District Court stated that "[t]he OIA retained in PPL Electric the discretion to create groupings of related employees in any way it chose and then to decide what its staffing needs were in each grouping."  (*Id.* at 16.)

13

We do not read these statements to be mutually exclusive or in direct conflict with each other. While the OIA plan did not give PPL unbridled discretion to pick and choose the employees to whom the early retirement benefits would be offered, it clearly gave the company discretion to determine groupings of related employees and assess its staffing needs for each grouping. Moreover, the District Court's allegedly inconsistent ruling was not determinative since the District Court ultimately reviewed the actions of PPL as a fiduciary under ERISA. For these reasons, we conclude that the District Court did not violate the doctrine of the law of the case.

For the foregoing reasons, the judgment of the District Court entered on May 19, 2005, will be affirmed.