

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-2003

# Brown v. Comm PA Emergency

Precedential or Non-Precedential: Precedential

Docket 01-3234

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

## Recommended Citation

"Brown v. Comm PA Emergency" (2003). *2003 Decisions.* Paper 818.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/818

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-3234

_____

CHARMAINE BROWN; ORAL DOUGLAS, in their individual capacities
and as Administrators of the Estate of Shacquiel A. Douglas

Appellants

v.

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF HEALTH
EMERGENCY MEDICAL SERVICES TRAINING INSTITUTE;
CITY OF PHILADELPHIA; MARK STEWART, individual and official
capacity; JOHN CAFFEY, individual and official capacity

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 99-cv-04901)
District Judge: The Honorable Herbert J. Hutton

_____

ARGUED APRIL 18, 2002

BEFORE: NYGAARD, AMBRO, and KRAVITCH,[*] Circuit Judges.

Sur Panel Rehearing Submitted September 12, 2002
Before: NYGAARD, AMBRO and KRAVITCH[*], Circuit Judges
(Filed: January 22, 2003 )

_____

[*]      Honorable Phyllis A. Kravitch, Circuit Judge for the United States Court of
Appeals for the Eleventh Circuit, sitting by designation.

David J. Berney, Esq. (Argued)
Nancy G. Rhoads, Esq.
Sheller Ludwig & Badey
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102
        Counsel for Appellants


Jane L. Istvan, Esq. (Argued)
Richard G. Feder, Esq.
City of Philadelphia Law Department
1515 Arch Street, One Parkway
Philadelphia, PA 19102
        Counsel for Appellees

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge

We vacated our prior opinion in this appeal and granted panel rehearing to clarify certain issues raised by the Appellants in their petition for *en banc* reconsideration.

Appellants, Charmaine Brown and Oral Douglas, filed a civil rights complaint against the Commonwealth of Pennsylvania Department of Health, the City of Philadelphia and two emergency medical technicians, Mark Stewart and John Caffey. Litigation arose out of the tragic death of Appellants' one-year-old son. The District Court granted summary judgment for the City because there was no genuine issue of material fact and concluded that deliberate indifference by city policymakers had not been demonstrated. The District Court also granted summary judgment for Stewart and Caffey because it concluded that the

-2-

Appellants' federal claim was barred by a prior state judgment. We will affirm, although for different reasons than given by the District Court.[1]

**I.**

Shacquiel Douglas, the one-year-old son of Charmaine Brown and Oral Douglas, was at the residence of Angela Morris, his maternal aunt. While there, Shacquiel choked on a grape. Morris dialed "911" at 11:06:22 a.m. and informed the operator that her nephew was choking on a grape. The 911 operator called Appellees Mark Stewart and John Caffey, who were emergency medical technicians at Engine 73, Fire House at 76th Street and Ogontz Avenue in Philadelphia. The operator then informed Morris that "[r]escue is gonna come help you." At 11:10:24 a.m., Morris again called 911 to determine when the EMTs would arrive. Morris was informed that "[r]escue was on the way." At 11:14:50 a.m., when the EMTs still had not arrived, Morris placed a third call to the 911 operator and was again told that help was on the way.

Stewart and Caffey arrived at Morris's residence at 11:16:35 a.m., ten minutes after the initial 911 call had been placed. They transported Shacquiel to Germantown Hospital and tried to restore Shacquiel's breathing during the trip. Once at the hospital, the grape was removed from Shacquiel's throat. He was then transferred to St. Christopher's Hospital for Children where he died two days later due to "asphyxia by choking."

Appellants filed a civil complaint in the Court of Common Pleas of Philadelphia

---

1.     We may affirm the District Court on any basis which has support in the record. *Bernitsky v. United States*, 620 F.2d 948, 950 (3d Cir. 1980).

County against Stewart and Caffey alleging a state tort cause of action based on the same facts as their federal claim. The Court of Common Pleas granted Stewart and Caffey's motion for summary judgment and dismissed all claims against them.

Appellants, in their individual capacities and as administrators of Shacquiel's estate, next filed a civil rights lawsuit in federal court under 42 U.S.C. § 1983 against the City of Philadelphia, and Stewart and Caffey in their individual and official capacities.[2] Count I of the Complaint asserts a § 1983 claim against Stewart and Caffey for alleged violations of their son's life, liberty, personal security, and bodily integrity without due process of law in violation of the Fourteenth Amendment and for deprivation of their son's rights, privileges, and immunities secured by the laws and Constitution of the Commonwealth of Pennsylvania. Count II asserts a § 1983 claim against the City for violations of the Commonwealth Constitution and the Fourth and Fourteenth Amendments. The claims arising under the Commonwealth Constitution and the Fourth Amendment were dismissed, so only the Fourteenth Amendment claim remained.

The District Court granted the City of Philadelphia's motion for summary judgment because it found that Appellants had failed to raise a genuine issue of material fact and because Appellants had not shown "deliberate indifference" by City policymakers. *Brown v. City of Philadelphia*, No. Civ.A. 99-4901, 2001 WL 884555, at *6 (E.D. Pa. July 31,

---

2. The Commonwealth of Pennsylvania Department of Health was also sued, but that claim was dismissed because it was barred by Eleventh Amendment sovereign immunity. *Brown v. Pennsylvania*, No. 99-4901, 2000 WL 562743, at *3 (E.D. Pa. May 8, 2000). This dismissal was not appealed.

-4-

2001).  The District Court also granted Stewart and Caffey's motion for summary judgment because it concluded that Appellants' federal lawsuit against Stewart and Caffey was barred under principles of claim preclusion by the prior state court judgment.  *Id.* at \*10.  It is from this order that Brown and Douglas now appeal.

## II. Deprivation of a Constitutional Right

The threshold issue presented by any § 1983 case is whether a plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution.  *See Baker v. McCollan*, 443 U.S. 137, 140 (1979).  Appellants allege that 42 U.S.C. § 1983, and the substantive component of the Fourteenth Amendment's Due Process Clause, provide them a cause of action under the federal Constitution.

The requirements for establishing a constitutional claim under 42 U.S.C. § 1983 are clear.  The pertinent language of the statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

By its own terms, the statute does not create substantive rights.  Instead, it only provides remedies for deprivations of rights established elsewhere in the Constitution or federal laws.

The initial point of reference for our analysis is *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).  In *DeShaney*, the Supreme Court

-5-

addressed a claim brought by a mother and her child under 42 U.S.C. § 1983 against the

county department of social services alleging that the child had been denied due process of

law when the department failed to intervene and protect him from the injuries he suffered at

the hands of his violent father. The Court reaffirmed that "our cases have recognized that

the Due Process Clauses generally confer no affirmative right to governmental aid, even

where such aid may be necessary to secure life, liberty, or property interests of which the

government itself may not deprive the individual." *Id*. at 196. The Court instructed:

> If the Due Process Clause does not require the State to provide its citizens
> with particular protective services, it follows that the State cannot be held
> liable under the Clause for injuries that could have been averted had it chosen
> to provide them. As a general matter, then, we conclude that a State's failure
> to protect an individual against private violence simply does not constitute a
> violation of the Due Process Clause.

*Id*. at 196-97.

The Court also found no duty to protect or rescue in the history of the amendment,

noting that "the Due Process Clause of the Fourteenth Amendment was intended to prevent

government 'from abusing [its] power, or employing it as an instrument of oppression.'" *Id.*

at 196 (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)). The Clause was intended

"to protect the people from the State, not to ensure that the State protected them from each

other." *Id.* Since the State is not constitutionally required by the Due Process Clause to

provide protective services, the Court found that there can be no liability when the State

fails to provide such services, even if it would have prevented the private injury from

occurring. *Id.* at 196-97.

It is a basic tenet of tort law that although an individual generally has no duty to rescue, once voluntarily undertaken, a rescue must not be performed negligently. *See, e.g.,* Restatement (Second) of Torts §§ 314, 323 (1965). One might infer from the general rule that, although the State is not constitutionally required to provide rescue services, once the State undertakes a rescue, federal constitutional law requires that it do so competently. Such an inference, however, incorrectly conflates state tort law and federal constitutional law. The Supreme Court has repeatedly stated that "the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation." *DeShaney*, 489 U.S. at 202 (collecting cases). Although state tort law might provide a remedy for a state's negligent rescue attempt, it neither logically nor legally follows that federal constitutional law must do the same. *See Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("Section 1983 is not a source of substantive rights and does not provide redress for common law torts — the plaintiff must allege a violation of a federal right.").

We have not decided whether the Due Process Clause requires states to provide adequate or competent rescue services when they have chosen to undertake these services. Other appellate courts addressing this question have held that states have no constitutional obligation to provide competent rescue services. *See Salazar v. City of Chicago*, 940 F.2d 233, 237 (7th Cir. 1991) ("Government generally has no constitutional duty to provide rescue services to its citizens, and if it does provide such services, it has no constitutional duty to provide competent services to people not in its custody."); *Bradberry v. Pinellas*

*County*, 789 F.2d 1513, 1517 (11th Cir. 1986) ("The Constitution, as opposed to local tort law, does not prohibit grossly negligent rescue attempts nor even the grossly negligent training of state officers."); *see also Archie v. City of Racine*, 847 F.2d 1211 (7th Cir. 1988) (en banc); *Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir. 1983). We agree with the reasoning of these decisions and join these Circuits in holding that there is no federal constitutional right to rescue services, competent or otherwise. Moreover, because the Due Process Clause does not require the State to provide rescue services, it follows that we cannot interpret that clause so as to place an affirmative obligation on the State to provide competent rescue services if it chooses to provide them.

### III.  Exceptions to *DeShaney's* General Rule

In *DeShaney*, the Supreme Court expressed two exceptions to its general non-liability rule. It held that there was an affirmative duty to protect "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs," thereby creating a special relationship. 489 U.S. at 200.  The "special relationship" exception is implicated when the state restrains an individual so as to expose the individual to harm. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 910-11 (6th Cir. 1995) ("A special relationship can only arise when the *state* restrains an individual.") (emphasis in original). *DeShaney* also left open the possibility that the state may be liable for constitutionally protected rights, even in the absence of a special relationship with an individual, when the

state, through its affirmative conduct, creates or enhances a danger for the individual. 489 U.S. at 201. This "state-created danger" exception applies when the state, through some affirmative conduct, places the individual in a position of danger. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).

The "special relationship" exception is not at issue here. However, the "state-created danger" exception, permitting liability when the State caused the harm or made the victim more vulnerable to an existing harm, is relevant to our inquiry. This exception was not clearly defined by the Court in *DeShaney*, but has been developed by the lower courts based upon the Court's statement in *DeShaney* that

> [w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter.

489 U.S. at 201.

We adopted the state-created danger theory of liability in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). To state a claim for a civil rights violation under the state-created danger theory, we held that a plaintiff must show: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actors acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the State and the plaintiff; and (4)

the state actors used their authority to create an opportunity that otherwise would not have existed for the third party to cause harm. *Id.* at 1208 (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir. 1995)). The "relationship" required by the third element of this test is different than the "relationship" in the "special relationship" exception to *DeShaney*. In the context of the state-created danger theory, the "relationship" requirement implies that there was contact between the parties such that the plaintiff was a foreseeable victim in the tort sense, and not in the custodial sense because the State has deprived the individual of the liberty necessary to care for himself. *Id.* at 1209 n.22.

Determining the appropriate lens through which we must view actions in the state-created danger context, though, is a vexing problem. *See Ziccardi v. City of Philadelphia*, 288 F.3d 57, 64 (3d Cir. 2002). The Supreme Court has specifically pointed out that the Due Process Clause is not implicated by an official's negligent act. *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Additionally, the Court has instructed that "deliberate indifference" is the necessary standard in order to establish § 1983 liability of a municipality. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "[I]ndefensible passivity," and "nonfeasance" do not rise to the level of a constitutional violation. *D.R., v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1376 (3d Cir. 1992)(en banc). In light of these holdings, we have required a plaintiff to show that a state actor acted with deliberate indifference to a known or obvious danger. *Morse v. Lower Merion Township*, 132 F.3d 902, 910 (3d Cir. 1997). We first explained that there is little difference between the terms "deliberate indifference," "reckless disregard," or "reckless

-10-

indifference." *Morse*, 132 F.3d at 910, n. 10. Each of these terms requires a state official's action that falls somewhere between intent and negligence. *Id.*

In *Fagan v. City of Vineland*, 22 F.3d 1296 (3d Cir. 1994) (*Fagan II*), sitting *en banc* we rejected the "reckless indifference" standard and further defined the substantive component of the Due Process clause, instructing that it "can only be violated when . . . [state] conduct amounts to an abuse of official power that 'shocks the conscience.'" 22 F.3d at 1303. The *Fagan II* litigation involved a high-speed police chase that resulted in the serious physical injury to, and death of, civilians. In *Kneipp*, we recognized the somewhat narrow holding of *Fagan II,* where we held that: "the *Fagan II* shocks the conscience standard is limited to police pursuit cases, and accordingly, we are not bound to follow that standard in the case before us [which involves the police leaving a drunk woman alone to walk home on a cold night]." 95 F.3d at 1207–08.

The same year that we issued our opinion in *Morse*, the Supreme Court issued its decision in *County of Sacramento v. Lewis*, 523 U.S. 833 (1997). The issue before the Supreme Court in *Lewis* was "whether a police officer violated the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." *Id.* at 836. The Court noted the difference between state action that deprives an individual of constitutional rights and state action that is merely tortious or negligent: "[i]t should not be surprising that the constitutional concept of conscience

-11-

shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Id.* at 848. The Supreme Court held that "in such circumstances," only state conduct that is "shocking to the conscience" will suffice. The Supreme Court was referring to high pressure situations where state actors must act quickly when it established the "shocks the conscience" standard "in such circumstances." *Id.* at 853.

In *Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir. 1999), a social worker allegedly wrongfully removed two children from a parent suspected of child abuse. Citing *Lewis*, we held that to establish liability, a state official's action "must be so ill-conceived or malicious that it 'shocks the conscience.'" 174 F.3d at 368. We applied the "shock the conscience" standard in *Miller* because although a social worker normally did not have to act in a "hyperpressurized environments [like] a prison riot or high-speed chase . . . he or she will rarely have the luxury of proceeding in a deliberate fashion." *Id.* at 375. Then, in *Ziccardi,* we stated that our decision in *Miller* "mandates [a standard] at least *something* more than subjective deliberate indifference" in circumstances requiring somewhat urgent state action." *Ziccardi*, 288 F.3d at 65 (emphasis in original). *Ziccardi* involved a law suit brought by a quadriplegic who alleged that paramedics caused his quadriplegia by mishandling him after an accidental injury. Our opinion in *Ziccardi* stopped short of requiring a 'shocks the conscience' standard in all substantive due process cases, however.

We derive from these cases the principle that the "shocks the conscience" standard

-12-

should apply in all substantive due process cases if the state actor had to act with urgency. This has been the law for police pursuit cases, *see, e.g., Fagan II*, and, social workers when they are acting with urgency to protect a child, *see, e.g., Miller; Croft v. Westmoreland County Children & Youth Services*, 103 F.3d 1123 (3d Cir. 1997). We now hold that the same 'conscience shocking' standard applies to the actions of emergency medical personnel—who likewise have little time for reflection, typically making decisions in haste and under pressure. With this standard in mind, we will examine the Appellant's claims, and the facts upon which they are based.

### IV.

### A. Stewart and Caffey

Appellants allege that EMTs Stewart and Caffey violated their son's constitutional rights in that: (1) Stewart and Caffey failed to "exercise the well-established and universally recognized protocols for choking situations"; (2) neither Stewart nor Caffey attempted to "reach down and directly" remove the grape from Shacquiel's throat; (3) Stewart and Caffey did not arrive at the Morris residence in a more timely manner because they could not locate Weaver Street on the station map; (4) when Stewart and Caffey left the station house to look for the Morris residence, they were lost; and (5) Stewart and Caffey were never provided "information on the neighborhood in which they were responsible for providing emergency services," and they failed to familiarize themselves with the neighborhood.

*Brown*, 2000 WL 562743, at *1.

The District Court concluded that the federal action against Stewart and Caffey was barred by the prior state court action. Appellants argue that the District Court erred in determining the *res judicata* effect of the state action. We do not reach Appellant's contention because we find that: (1) under the general rule of *DeShaney*, Shacquiel Douglas had no constitutional right to be rescued or to be provided with competent rescue services, and (2) *DeShaney's* two exceptions are inapplicable. Thus, no viable federal claim exists against Stewart and Caffey.

The "special relationship" exception is applicable "when the State takes a person into its custody and holds him there against his will" or, where "the State, by the affirmative exercise of its power, so restrains an individual's liberty that it renders him unable to care for himself." *DeShaney*, 489 U.S. at 199-200. Such circumstances are not present here. Attempting, however, to state a claim under the "state-created danger" exception, appellants allege that:

> (a) [Stewart and Caffey's] actions created foreseeable and fairly direct harm to the decedent and the plaintiffs; (b) their actions evidenced willful disregard of harm to the decedent and the plaintiffs; (c) a relationship existed between the parties; and (d) their actions created and/or increased a danger to the decedent that otherwise would not have existed.

Compl. at ¶ 36.

We need to consider only one of the *Kneipp* elements to understand why

-14-

Appellants' state-created danger claim fails.  First, the allegation that Stewart and Caffey

acted with "willful" disregard is misplaced.  As noted, in cases where the state actor is

acting with urgency, the standard is whether the actions shock the conscience of the court.

On this record, there are no actions that meet this standard.  The record depicts an attempt

by Stewart and Caffey to ascertain the location of the victim through all available means, as

well as their concerted effort to reach him as quickly as possible.   The delay in reaching

Shacquiel was not caused by Stewart and Caffey purposely delaying their rescue efforts or

acting in an otherwise outrageous manner.  Instead, the record depicts EMTs who attempted

to arrive at the scene of the incident as rapidly as they could.  Although Stewart and Caffey

may have ultimately failed to rescue Shacquiel successfully from a pre-existing danger, we

have already said that they had no constitutional obligation to do so.  We cannot say that

their actions in attempting a failed rescue shocks the conscience.  Thus, Appellants have not

demonstrated a viable state-created danger claim.  We will, therefore, affirm the District

Court's award of summary judgment to Stewart and Caffey.

### B.  City of Philadelphia

Appellants also allege that the City of Philadelphia violated Shacquiel's

constitutional rights under the "policy or custom" theory of § 1983 municipal liability.

A municipality may be held liable if a constitutional violation was caused by action taken

pursuant to a municipal policy or custom.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

691 (1978).  But a municipality cannot be liable solely as an employer because there is no

*respondeat superior* theory of municipal liability in § 1983 actions. *Id.* "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

The Supreme Court has recognized that "under certain circumstances" a municipality may be liable under § 1983 for a failure to adequately train its police officers. *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). The first question in any case alleging municipal liability for a failure to train is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 385. Furthermore "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388.

It is possible for a municipality to be held independently liable for a substantive due process violation even in situations where none of its employees are liable. *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994)(*Fagan I*).[3] In *Fagan I* we held "that a

---

3.     We note that there is a split among the courts of appeals on this issue. Some courts have explicitly rejected our holding in *Fagan I*. *See Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154-55 (10th Cir. 2001), *cert. denied*, 122 S. Ct. 40 (2001); *Young v. City of Mount Ranier*, 238 F.3d 567, 579 n.9 (4th Cir. 2001); *Evans v. Avery*, 100 F.3d 1033, 1040 (1st Cir. 1996); *Thompson v. Boggs*, 33 F.3d 847, 859 n.11 (7th Cir. 1994). One panel of this court has even questioned the panel opinion in *Fagan I*. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 n.13 (3d Cir. 1995). But other courts have agreed with our opinion in *Fagan I*. *See Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002), *petition for cert. filed*, 71 U.S.L.W. 3021 (U.S. June 24, 2002) (No. 01-1882). This debate has no bearing upon the present case, however, because we find no constitutional violation by

municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution." *Id.* at 1294. However, for there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) (emphasizing "the separate character of the inquiry into the question of municipal responsibility and the question whether a constitutional violation occurred."). It is not enough that a municipality adopted with deliberate indifference a policy of inadequately training its officers. There must be a "direct causal link" between the policy and a constitutional violation. *Canton*, 489 U.S. at 385.

This is where Appellants' municipal liability claim fails. They allege that the City of Philadelphia had a number of policies involving EMTs which were enacted with deliberate indifference and which caused harm to them and their son. Even if we accept everything Appellants allege as true, they will have still failed to establish that the City's policies caused *constitutional* harm. The City was under no constitutional obligation to provide competent rescue services. The failure of the City and its EMTs to rescue Shacquiel Douglas from privately-caused harm was not an infringement of Appellants' constitutional rights.[4] There has been no constitutional harm alleged. Hence, there is no municipal

_____

either the City or its employees.

4. This case is different from our recent decision in *Ziccardi v. City of Philadelphia*, 288 F.3d 57 (3d Cir. 2002). The paramedics in that case allegedly rendered the plaintiff a

liability under § 1983.

## V.

In summary, states are not constitutionally obligated to provide rescue services, nor are they constitutionally required to provide competent rescue services voluntarily undertaken. Because Appellants have failed to show any actions that shock the conscience of the court, they can prove no violation of their federal constitutional rights. We will affirm.

---

quadriplegic by forcefully pulling him off the ground by his arms and throwing him over their shoulders. *Id*. at 59. The allegation in *Ziccardi* was not that paramedics had failed to rescue the plaintiff from a pre-existing injury— as is the allegation in the present case—rather it was that the paramedics actually caused the injury in the first place.